STERLING SECRET SERVICE, INC., *v.*
DEPARTMENT OF STATE POLICE

OPINION OF THE COURT

1. LICENSES—PRIVATE SECURITY GUARDS.

Private police, private security guards, and all agencies engaged in private security work must be licensed by the Department of State Police (MCLA § 338.1051 *et seq.*).

2. STATUTES—PRIVATE SECURITY GUARD ACT—ENFORCEMENT—STATE POLICE.

The Private Security Guard Act of 1968 empowers the Department of State Police to enforce its provisions (MCLA § 338-.1077).

3. ADMINISTRATIVE LAW AND PROCEDURE—PRIVATE SECURITY GUARD ACT—STATE POLICE—RULES—REGULATIONS.

The Private Security Guard Act of 1968 empowers the Department of State Police to make rules and regulations necessary to effectuate the purposes of the act (MCLA § 338.1077).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 33 Am Jur, Licenses § 10.
[2, 3] 37 Am Jur, Municipal Corporations § 309.
   16 Am Jur 2d, Constitutional Law § 259 *et seq.*
[4] 1 Am Jur 2d, Administrative Law §§ 201, 202.
[5] 22 Am Jur 2d, Declaratory Judgments §§ 31–33.
[6] 2 Am Jur 2d, Administrative Law §§ 583, 584, 586, 592, 593.
[7] 42 Am Jur 2d, Injunctions §§ 172, 174.
[8] 2 Am Jur 2d, Administrative Law § 288.
[9, 10] 2 Am Jur 2d, Administrative Law § 605.
[11, 12] 22 Am Jur 2d, Declaratory Judgments §§ 31–33.
[13–15] 2 Am Jur 2d, Administrative Law § 277 *et seq.*
[16] 33 Am Jur, Licenses § 10.
   37 Am Jur, Municipal Corporations § 309.
   16 Am Jur 2d, Constitutional Law § 259 *et seq.*
[17–20] 2 Am Jur 2d, Administrative Law § 289 *et seq.*
[21] 2 Am Jur 2d, Administrative Law §§ 201–208, 572.
[22] 32 Am Jur, Licenses § 10.
[23] 2 Am Jur 2d, Administrative Law §§ 230, 231, 261, 262,

4. ADMINISTRATIVE LAW AND PROCEDURE—STATE POLICE—ADMINISTRATIVE PROCEDURE ACT.

> The Department of State Police, in the exercise of its rule-making power, is subject to the provisions of the Administrative Procedure Act (MCLA § 24.101 *et seq.*)

5. DECLARATORY JUDGMENT — PRIVATE SECURITY GUARD ACT — LICENSES.

> Declaratory judgment as to whether rules proposed by the Department of State Police to regulate private security guards are unreasonable and invalid because in excess of the authority delegated under the Private Security Guard Act of 1968 is proper where plaintiff private security guard service is legitimately interested in maintaining its business without fear or threats of losing its license, events which may occur if plaintiff fails to comply, at great financial cost otherwise unnecessary, with the proposed rules (MCLA § 338.1051 *et seq.*)

6. ADMINISTRATIVE LAW AND PROCEDURE — CONSTITUTIONAL LAW — LICENSES — STATUTES — INJUNCTION.

> Injunctive relief may be granted on a claim of irreparable injury without requiring exhaustion of administrative remedies where a licensing or other regulatory statute is attacked as unconstitutional.

7. ADMINISTRATIVE LAW AND PROCEDURE—INJUNCTION.

> Injunction is the appropriate remedy to determine whether rights have been affected by the arbitrary or unreasonable action of an administrative agency.

8. ADMINISTRATIVE LAW AND PROCEDURE — RULES — REPEAL — PETITION.

> Any interested person may petition an administrative agency requesting repeal of any rule (MCLA § 24.103).

9. ADMINISTRATIVE LAW AND PROCEDURE—EXHAUSTION OF REMEDIES —USELESS ACT.

> The rule requiring a plaintiff to exhaust his administrative remedies has a number of exceptions, one of which is that the law will not require a citizen to undertake a vain and useless act.

10. ADMINISTRATIVE LAW AND PROCEDURE—DECLARATORY JUDGMENT —EXHAUSTION OF REMEDIES—RULES—REPEAL—USELESS ACT.

> Exhaustion of remedies by requesting repeal by an administrative agency of a recently adopted rule would be a useless

act and is not required where plaintiff seeking declaratory judgment that the rule is invalid appeared at the public hearing preceding adoption of the rule and expressed its opposition unsuccessfully and the agency had clearly manifested an intention to adopt the rule.

11. ADMINISTRATIVE LAW AND PROCEDURE—DECLARATORY JUDGMENT —ADMINISTRATIVE PROCEDURE ACT—CONTESTED CASE.

A plaintiff seeking a declaratory judgment that certain rules adopted by the Department of State Police for administration of the Private Security Guard Act of 1968 are invalid is not required first to proceed under the "contested case" provisions of the Administrative Procedure Act by disobeying the rules and thereby risking loss of its license and a criminal prosecution; this would defeat the purpose of a declaratory judgment proceeding (MCLA §§ 24.104–24.108; § 338-.1051 et seq.; Administrative Code Supp No 58, RR 27.4001–38.4006).

12. DECLARATORY JUDGMENT—NECESSITY—TEST.

One test of the right to institute proceedings for declaratory judgment is the necessity of present adjudication as a guide for plaintiff's future conduct in order to preserve his legal rights.

13. ADMINISTRATIVE LAW AND PROCEDURE—RULES—REGULATIONS— DELEGATION.

The legislature may authorize the adoption by an administrative agency, charged with the administration of a particular enactment, of rules and regulations designed to effectuate the purposes of the enactment.

14. ADMINISTRATIVE LAW AND PROCEDURE—POWER—RULE-MAKING.

An administrative agency may not, under the guise of its rule-making power, abridge or enlarge its authority or exceed the powers given to it by statute.

15. ADMINISTRATIVE LAW AND PROCEDURE—RULES—VALIDITY.

Rules adopted by an administrative agency are valid so long as they are not unreasonable; and, if doubt exists as to their invalidity, they must be upheld.

16. STATUTES—PRIVATE SECURITY GUARDS—LEGISLATIVE INTENT.

The legislature, by enactment of the Private Security Guard Act of 1968, intended to protect the general public from those private security agencies who would misrepresent themselves as official law enforcement agencies (MCLA 1969 Cum Supp § 338.1051 et seq.).

17. ADMINISTRATIVE LAW AND PROCEDURE—PRIVATE SECURITY GUARDS
—NAME—STATE POLICE—RULES.

Rule prohibiting use of the words "police," "Michigan" or
the name of a specific city, village or county in any private
security agency name and rule prohibiting solicitation of busi-
ness with such designation are rationally related to the pur-
pose of the Private Security Guard Act of 1968 and are
not in excess of the rule-making authority of the Department
of State Police under the act (MCLA § 338.1051 *et seq.*; Ad.
Code Supp No 58, RR 28.4002, 28.4006).

18. ADMINISTRATIVE LAW AND PROCEDURE—PRIVATE SECURITY GUARDS
—EMPLOYEE LISTS—QUARTERLY REPORTS.

Rule adopted by the Department of State Police which requires
that licensed private security agency file a complete employee
personnel list with the department quarterly is reasonable
and consonant with the section of the Private Security Guard
Act of 1968 requiring that each licensee shall maintain ade-
quate and complete personnel information (MCLA § 338.1067;
Ad. Code Supp No 58, R 28.4003).

19. ADMINISTRATIVE LAW AND PROCEDURE—PRIVATE SECURITY GUARDS
—BADGE—SHIELD—RULE—VALIDITY.

Rule adopted by the Department of State Police which requires
that a badge or shield worn by private security personnel
be square or rectangular in shape is beyond the rule-making
authority of the department, because the department may
prohibit only those uniforms or insignia which deceive or
confuse the public, and it is not shown that other shapes
would deceive or confuse (MCLA § 338.1069; Ad. Code Supp
No 58, R 28.4005).

20. ADMINISTRATIVE LAW AND PROCEDURE—PRIVATE SECURITY GUARDS
—PATCHES—EMBLEMS—RULE—VALIDITY.

Rule adopted by the Department of State Police which indicates
only those patches and emblems for private security person-
nel which *will* be approved by the department, and indicates
that other designs may be submitted for approval, is not
unreasonable (MCLA § 338.1069; Ad. Code Supp No 58, R
28.4004).

21. ADMINISTRATIVE LAW AND PROCEDURE—PRIVATE SECURITY GUARDS
—INSIGNIA—APPROVAL—JUDICIAL REVIEW.

Should the Department of State Police refuse to approve a
proposed insignia for private security personnel, then a

private security agency can secure judicial review of the department's findings pursuant to the contested case provisions of the Administrative Procedure Act (MCLA §§ 24.104–24.108; MCLA § 338.1069; Ad. Code Supp No 58, R 28.4004).

22. LICENSES—PRIVATE SECURITY GUARDS.

A license to engage in private security work is a privilege granted by the state and subject to statutory law and reasonable and proper rules of the Department of State Police.

DISSENT OF LESINSKI, C. J.

23. ADMINISTRATIVE LAW AND PROCEDURE—PRIVATE SECURITY GUARDS —QUARTERLY REPORTS.

*The requirement of the Private Security Guard Act of 1968 that private security agencies keep adequate and complete personnel information only implies that the records will be open to reasonable inspection by the Department of State Police, and rule adopted by the department requiring quarterly personnel reports is beyond its authority as not necessary to the enforcement of the act (MCLA § 338.1067; Ad. Code Supp No 58, R 28.4003).*

Appeal from Wayne, Joseph G. Rashid, J. Submitted Division 1 October 17, 1969, at Detroit. (Docket No. 7,503.) Decided December 4, 1969. Rehearing denied January 15, 1970.

Complaint by Sterling Secret Service, Inc., a Michigan corporation, against the Department of State Police, Secretary of State, Wayne County Concealed Weapons Licensing Board, Genesee County Concealed Weapons Licensing Board, and Shiawassee County Concealed Weapons Licensing Board for declaratory judgment regarding rules proposed by the State Police which would regulate private security guards and for injunctive relief. Accelerated judgment for defendants. Plaintiff appeals. Reversed and remanded.

*Helm, Marshall, Schumann & Greiner (Stanley H. Slazinski*, of counsel), for plaintiff.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, and *Wallace K. Sagendorph*, Assistant Attorney General, for defendants.

Before: LESINSKI, C. J., and J. H. GILLIS and DANHOF, JJ.

J. H. GILLIS, J.  By the Private Security Guard Act of 1968,[1] all private police, private security guards, and all agencies engaged in private security work must be licensed by the Department of State Police.  Minimum qualifications are established for such individuals and agencies,[2] and the act empowers the Department of State Police to enforce its provisions.[3]  The act also empowers the department, as the administrative agency charged with the act's enforcement, to make rules and regulations necessary to effectuate the purposes of the act.[4]  In the exercise of its rule-making power, the department is subject to the provisions of the Administrative Procedure Act (MCLA §§ 24.101–24.110 [Stat Ann 1969 Rev §§ 3.560(21.1)–3.560(21.10)]), and to the provisions of PA 1943, No 88, as amended (MCLA §§ 24.71–24.80 [Stat Ann 1969 Rev §§ 3.560(7)–3.560 (16)]).

On October 11, 1968, a public hearing[5] was held in Lansing, Michigan, concerning the adoption of cer-

[1] PA 1968, No 330 (MCLA 1969 Cum Supp § 338.1051 *et seq.* [Stat Ann 1969 Cum Supp § 18.185 *et seq.*]).
[2] Section 6, MCLA 1969 Cum Supp § 338.1056 (Stat Ann 1969 Cum Supp § 18.185[6]).
[3] Section 27, MCLA 1969 Cum Supp § 338.1077 (Stat Ann 1969 Cum Supp § 18.185[27]).
[4] Section 27, MCLA 1969 Cum Supp § 338.1077 (Stat Ann 1969 Cum Supp § 18.185[27]).
[5] See MCLA § 24.71(a) (Stat Ann 1969 Rev § 3.560[7a]); CLS 1961, § 24.102 (Stat Ann 1969 Rev § 3.560[21.2]).

tain rules governing the operations of private security agencies. Plaintiff, Sterling Secret Service, Inc., was present at the hearing and expressed opposition to the proposed rules. Thereafter, on May 15, 1969, the proposed rules were published in the Michigan administrative code supplement[6] and became effective as law throughout the state.[7]

Plaintiff commenced this action for declaratory judgment on April 28, 1969.[8] It was alleged that the proposed rules were arbitrary, unreasonable, and in excess of the conferred rule-making authority of the Department of State Police. Plaintiff requested that the trial court declare the rules to be without force and effect, and that permanent injunctive relief issue against the department's enforcement of its proposed rules.

Upon defendants' motions for accelerated judgment of dismissal, the trial judge dismissed plaintiff's complaint. This appeal followed. The principal question presented is the validity of the department's rules.

## Availability of Declaratory Relief

This appeal presents a preliminary procedural question—namely, the availability of declaratory relief. The trial judge was of opinion that:

"plaintiffs are legitimately interested in maintaining their business without fear or threat of losing their license,[9] events which may occur if plaintiffs

---

[6] Administrative Code Supp No 58, R R 28.4001–28.4006.

[7] MCLA § 24.74 (Stat Ann 1969 Rev § 3.560[10]).

[8] Plaintiff's action was brought on its behalf and on behalf of other private security agencies similarly situated. Whether plaintiff could successfully maintain a class action, see GCR 1963, 208, was argued below, but the issue is not before us on appeal.

[9] At the time plaintiff commenced this action, it was a licensed security agency. It had obtained a license pursuant to § 28 of the act, MCLA 1969 Cum Supp § 338.1078 (Stat Ann 1969 Cum Supp § 18.185[28]).

fail to comply, at great financial cost otherwise unnecessary, with the proposed rules. In such circumstances a declaratory judgment as to whether the proposed rules are unreasonable and invalid because in excess of the authority delegated under the security guard act is not inappropriate."

We agree.

The Administrative Procedure Act[10] is a partial adoption of the Model State Administrative Procedure Act. Although § 6 of the latter,[11] which provides for declaratory judgments as to the validity of administrative rules without prior resort to the agency, was not adopted, Michigan case law comes close to the same position.[12] Thus, in *Diggs* v. *State Board of Embalmers* (1948), 321 Mich 508, it was held that where a licensing or other regulatory statute is attacked as unconstitutional, a court may grant injunctive relief on a claim of irreparable injury without requiring exhaustion of administrative remedies.

"This Court has repeatedly held that in cases where an irreparable injury will result from the acts of public officials in attempting to proceed under an invalid law, the jurisdiction of equity may be invoked for the purpose of obtaining injunctive relief and a determination as to the constitutionality of the statute that is involved." *Diggs* v. *State Board of Embalmers, supra,* p 514.

It is also well established that "injunction is the appropriate remedy to determine whether rights

10 PA 1952, No 197 (MCLA § 24.101 *et seq.* [Stat Ann 1969 Rev § 3.560(21.1) *et seq.*]).
11 Now § 7 of the Revised Model State Administrative Procedure Act (1961). The Revised Act was promulgated by the Commissioners on Uniform State Law in 1961. See Cooper, *Administrative Law,* 10 Wayne L Rev 1 (1963).
12 See Cramton, *The Doctrine of Exhaustion of Administrative Remedies in Michigan.* 44 Mich SBJ 10, 15 (July 1965); Kelman, *Administrative Law,* 12 Wayne L Rev 21, 39, fn. 92.

have been affected by the arbitrary or unreasonable action of an administrative agency. If the discretionary power of an administrative agency is abused or its judgment improperly exercised, the judiciary has the right to restrain the same." *Reed* v. *Civil Service Commission* (1942), 301 Mich 137, 152. See also *Hiers* v. *Detroit Superintendent of Schools* (1965), 376 Mich 225, 234; *Mardiros* v. *Secretary of State* (1968), 11 Mich App 541, 546.

In its complaint, plaintiff had alleged that the proposed rules were arbitrary, unreasonable, and in excess of the rule-making powers of defendant department. The trial court thus possessed jurisdiction to enjoin enforcement of the proposed rules, were it satisfied that the rules, as alleged, were arbitrary and unreasonable.[13]

Moreover, plaintiff was entitled to avail itself of the declaratory judgment remedy, notwithstanding plaintiff's conceded failure to exhaust administrative remedies available under the Administrative Procedure Act.

By § 3 of the Administrative Procedure Act,[14] any interested person may petition an agency requesting the repeal of any rule. Defendants contend that

---

[13] In its complaint, plaintiff had also alleged a failure on the part of defendant department to promulgate rules of agency procedure governing petitions for revocation of existing rules. See MCLA § 24.103 (Stat Ann 1969 Rev § 3.560[21.3]). A failure to adopt rules of procedure for notice and hearing in contested cases, likewise required by statute, see MCLA § 24.104 (Stat Ann 1969 Rev § 3.560[21.4]), was further alleged. The trial court ruled that, insofar as plaintiff's complaint alleged a failure on the part of state officers to perform a clear statutory duty, it had no jurisdiction to entertain plaintiff's complaint, since plaintiff's remedy was by writ of mandamus. The trial court's ruling was correct. By statute, see MCLA § 600.4401 (Stat Ann 1969 Cum Supp § 27A.4401), all actions for mandamus against state officers must be brought in the Court of Appeals or in the Supreme Court. See also, *Mardiros* v. *Secretary of State* (1968), 11 Mich App 541, 546. However, the absence of jurisdiction in this regard did not preclude judicial review of the alleged unreasonableness of the department's proposed rules.

[14] MCLA § 24.103 (Stat Ann 1969 Rev § 3.560[21.3]).

plaintiff should have exhausted this avenue of administrative relief prior to initiating suit. We cannot agree.

The Department of State Police had clearly manifested an intention to adopt the proposed rules. Under the circumstances, an attempt on the part of plaintiff to have the rules revoked would have been a vain and useless act.

" 'To this rule requiring the plaintiff to exhaust his administrative remedies, there are a number of exceptions, one clear exception is that the law will not require a citizen to undertake a vain and useless act. The law does not require useless expenditures of effort.' " *Trojan* v. *Township of Taylor* (1958), 352 Mich 636, 638, 639.

Defendants also contend that plaintiff should have proceeded under the "contested case" provisions of the Administrative Procedure Act.[15]   This would require that plaintiff first disobey the department's rules. Thereafter, upon revocation of its license,[16] or upon criminal prosecution,[17] plaintiff could secure a judicial determination of the validity of such rules. We likewise decline to embrace this argument. To require that plaintiff proceed by way of a "contested case," thereby risking loss of its license, would be contrary to the very purpose for which declaratory judgment proceedings are a part of our judicial procedures.

---

[15] See MCLA §§ 24.104–24.108 (Stat Ann 1969 Rev §§ 3.560[21.4]–3.560[21.8]).

[16] Under § 10 of the Private Security Guard Act of 1968, MCLA 1969 Cum Supp § 338.1060 (Stat Ann 1969 Cum Supp § 18.185[10]), the department possesses the power of revocation, upon good cause shown, for violation of any provision of the act.

[17] Section 10(2) of the Private Security Guard Act of 1968, MCLA 1969 Cum Supp § 338.1060 (Stat Ann 1969 Cum Supp § 18-.185[10]), makes it a misdemeanor for a licensee, upon notification of revocation of its license, to fail to surrender its certificate of license to the department within 48 hours of notice of revocation.

In *Bane* v. *Township of Pontiac* (1955), 343 Mich 481, the Court stated at pp 488, 489:

"In *Updegraff* v. *Attorney General* (1941), 298 Mich 48, 52 (135 ALR 931), we stated:

" '*One test of the right to institute proceedings for declaratory judgment is the necessity of present adjudication as a guide for plaintiff's future conduct in order to preserve his legal rights.*'

"Surely persons who are interested in maintaining their homes without fear of criminal prosecution and are thus threatened with the loss of their places of abode are interested in an actual controversy and have a right to bring the suit. We have permitted a declaration of rights under zoning and building regulations, *C. K. Eddy & Sons* v. *Tierney* (1936), 276 Mich 333; *Long* v. *Township of Norton* (1950), 327 Mich 627, and have permitted the validity as well as the construction of a statute to be the subject of a declaratory judgment. See *Evans Products Co.* v. *State Board of Escheats* (1943), 307 Mich 506; 1 Anderson, Declaratory Judgments (2d ed), § 159. No proceedings, as yet, have been begun against any of the plaintiffs but the insecurity and danger or possibly the imminence of such proceedings naturally threaten plaintiffs and make them fearful of losing what have been their homes for years. Under the circumstances, plaintiffs are entitled to avail themselves of the declaratory judgment remedy." (Emphasis supplied.)

Likewise, in the present case, it is clear that an actual controversy, see GCR 1963, 521.1, exists between the parties to this suit. The rules have been published; the department has manifested an intent to enforce its new rules.[18] Furthermore, as noted by the trial judge, plaintiff has a legitimate interest

---

[18] A form letter was sent by the Department of State Police to all security agencies on June 9, 1969. Agencies were warned that noncompliance with the department's rules was a misdemeanor, subjecting a licensee to arrest and prosecution.

in maintaining its business without fear or threat of losing its license.

Under the circumstances, we conclude that plaintiff properly sought declaratory relief. Only by an action for declaratory judgment could plaintiff obtain "present adjudication as a guide for plaintiff's future conduct in order to preserve [its] legal rights." *Updegraff* v. *Attorney General, supra.*

## Validity of the Department's Rules

Plaintiff in this case concedes the rule-making authority of the Department of State Police. It is firmly established that the legislature may authorize the adoption by an administrative agency, charged with the administration of a particular enactment, of rules and regulations designed to effectuate the purposes of the enactment. *Argo Oil Corporation* v. *Atwood* (1935), 274 Mich 47; *Ranke* v. *Corporation & Securities Commission* (1947), 317 Mich 304; *Roberts Tobacco Company* v. *Department of Revenue* (1948), 322 Mich 519; *Coffman* v. *State Board of Examiners in Optometry* (1951), 331 Mich 582. Moreover, it is clear that under the Private Security Guard Act of 1968 the legislature contemplated the exercise of rule-making power by the Department of State Police.[19]

Plaintiff contends, however, that in this case the department has abused its rule-making authority. The specific rules are said to be arbitrary, unreasonable, and in excess of the department's rule-making powers. Plaintiff invokes the rule that an administrative agency may not, under the guise of its rule-making power, abridge or enlarge its authority or exceed the powers given to it by statute. See *Ranke*

---

[19] See footnote 4, *supra.* And see MCLA § 24.71a (Stat Ann 1969 Rev § 3.560[7a]).

v. *Corporation & Securities Commission, supra,* p 309.

Before the trial court, no testimony of witnesses was offered, as the issue presented is essentially legal in character. The decisive question is whether the department has abused its rule-making authority. Our limited function here is to examine the rules and determine whether they bear a proper relationship to the legislative act. *Ranke v. Corporation & Securities Commission, supra; Coffman v. State Board of Examiners in Optometry, supra.*

" 'The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.' " *Peaden v. Employment Security Commission* (1959), 355 Mich 613, 629, quoting *Mississippi Valley Barge Line Co.* v. *United States* (1934), 292 US 282, 286, 287 (54 S Ct 692, 694, 78 L Ed 1260, 2165).

The rules are valid so long as they are not unreasonable; and, if doubt exists as to their invalidity, they must be upheld. *Toole v. Michigan State Board of Dentistry* (1943), 306 Mich 527. See also *Hiers* v. *Detroit Superintendent of Schools* (1965), 376 Mich 225, 234, 235.

It is clear that the legislature, by enactment of the Private Security Guard Act of 1968, intended to protect the general public from those private security agencies who would misrepresent themselves as official law enforcement agencies. Various provisions of the act are designed to eliminate the danger of public confusion. It is in light of this purpose that we examine the challenged rules.

Rule 2 prohibits use of the words "police," "Michigan" or the name of a specific city, village or county in any agency name. Rule 6 prohibits solicitation

of business with such designation.  Section 23 of the act[20] provides:

"No licensee shall use any designation or trade name which has not first been approved by the department, *nor shall any licensee use any designation or trade name which implies any association with any municipal, county or state government or the federal government, or agency thereof."* (Emphasis supplied.)

We are in accord with the views expressed by the trial judge:

"The language of this section is broad and comprehensive.  There is no need for the legislature to be more specific.  Obviously a judgment must be made as to which designations imply an association with government departments or agencies.  The judgment is clearly to be made by the rule-maker * * * .  If the state police cannot prohibit the precise and explicit nomenclature of identification which the government bodies themselves employ as unavailable to private companies, the section has no meaning whatever."

Plaintiff suggests that § 14 of the act[21] authorizes use of the word "police" in agency names.  Section 14 requires that the designation "private *police"* appear on the individual identification cards of private security personnel.  We are unwilling to conclude that the legislature has thereby impliedly authorized use of "police" in agency names.  The legislature may well have concluded that separate treatment was justified.[22]  Furthermore, such an

---

[20] MCLA 1969 Cum Supp § 338.1073 (Stat Ann 1969 Cum Supp § 18.185[23]).

[21] MCLA 1969 Cum Supp § 338.1064 (Stat Ann 1969 Cum Supp § 18.185[14]).

[22] Use of the word "police" in an agency name would appear to present a far greater danger of public confusion.  An agency name receives repeated public exposure, whereas it is unlikely that an individual identification card would be so exposed to public view.

interpretation would emasculate the broad prohibition against names which imply *any* association with governmental agencies.

We find no arbitrary abuse of discretion with regard to the limitations upon agency names. Rules 2 and 6 are rationally related to the end sought to be achieved by the act; they are not in excess of the department's rule-making authority.

Rule 3 requires that each licensee file with the Department of State Police complete employee personnel list on a quarterly basis. We see nothing unreasonable in this requirement. Section 17 of the act[23] provides that each licensee shall maintain adequate and complete personnel information. A necessary implication of this provision is that such information is to be disclosed to the agency charged with enforcement of the act.

Rule 4 concerns employee uniforms and insignia. Minimum requirements for employee uniforms are established. Rule 4 also designates those shoulder patches and emblems which will be approved by the department. Rule 5 requires that the badge or shield worn by private security personnel be square or rectangular in shape.

As authority for the adoption of these rules, the department relies upon § 19 of the act.[24] That section provides in part:

"The particular type of uniform and insignia for employees of a licensee or in the case of an individual, *must be approved by the department and shall be such that they will not deceive or confuse the public or be identical with that of any law enforcement officer of the federal government, state or any political subdivision thereof in the community*

[23] MCLA 1969 Cum Supp § 338.1067 (Stat Ann 1969 Cum Supp § 18.185[17]).
[24] MCLA 1969 Cum Supp § 338.1069 (Stat Ann 1969 Cum Supp § 18.185[19]).

*of the license holder.* Shoulder identification patches shall be worn on all uniform jackets, coats and shirts and shall include name of the licensee or agency. Shoulder identification patches or emblems shall not be less than 2 inches by 3 inches in size.

"A badge or shield shall not be worn or carried by any private policeman, special policeman, watchman, or employee or licensee of any patrol service agency or private security guard agency, unless *approved by the director of the department of state police.*" (Emphasis supplied.)

We are of the opinion that Rule 5 is beyond the rule-making authority of the department. By its terms, the rule is an attempt to standardize the shape of employee badges. They must be square or rectangular; no other shape will be approved by the department. Nowhere in the act, however, is it apparent that the legislature intended to confer upon the Department of State Police the broad power to standardize the shape of employee insignia.

Section 19 provides that employee uniform and insignia shall be such that they will not deceive or confuse the public. The act thus provides the standard by which employee attire is to be judged. *Cf. Ranke* v. *Corporation & Securities Commission, supra,* p 309. The department, in the exercise of its rule-making authority, may prohibit *only* those uniforms and insignia which deceive or confuse the public. Any attempt to bar the use of particular insignia, without regard to whether such insignia deceive or confuse the public, is beyond the scope of the department's delegated authority. Rule 5, in our opinion, constitutes an attempt on the part of the department to prohibit use of all shapes other than those required by the rule, without regard to whether such shapes deceive the public. Nothing suggests that a circular badge, for example, would deceive or confuse the public. Any conclusion that

circular badges are inherently deceptive would be without rational justification.

The department does not, however, seek to justify the requirement that all badges be square or rectangular on the ground that those shapes prohibited by Rule 5 deceive or confuse the public. Rather, the department contends that the public will best be protected against deception by the adoption of distinctive insignia which will, in time, serve to identify the wearer as a private security guard. We cannot accept this rationale. Implicit in such a justification is a judgment which, we think, must first be made by the legislature. We reiterate that nothing in the act suggests that the legislature has concluded that only by standardizing employee insignia will public deception be eliminated. Nor has the legislature delegated to the Department of State Police the task of standardizing the attire of private security personnel. We conclude that Rule 5 is invalid. In adopting the rule, the department exceeded the rule-making authority conferred upon it by the private security guard act. Upon remand, the trial court should permanently enjoin enforcement of the rule.

But for the existence of an additional provision in Rule 4, we would likewise hold invalid the department's requirements concerning uniform patches and emblems. By subparagraph 2 of Rule 4, however, the department has indicated only those patches and emblems *which will be approved by the department.*[25] Unlike Rule 5, it is apparent that such requirements are not absolute. Subparagraph 3 of Rule 4 provides:

"Any deviation from the requirements of paragraph (2) requires approval by the department."

---

[25] For example, subparagraph 2 provides that all red shoulder patches which bear the name of the licensee, have white lettering, and are of half-moon design 3 in. by 5 in. in size will be approved by the department.

In light of this additional provision, we see nothing unreasonable in Rule 4. Any agency desiring to utilize different shoulder insignia is permitted by the rule to apply for approval. We cannot assume that, in reviewing proposed insignia, the department would apply arbitrary standards.[26] Upon application for approval, the department must determine whether the tendered insignia are such that they deceive or confuse the public. Should the department refuse to approve proposed insignia, an agency could then secure judicial review of the department's findings.[27]

In summary, we have examined the challenged rules and conclude that Rules 2, 3, 4 and 6 are within the department's rule-making authority. Enforcement of such rules will not deprive plaintiff of any personal property rights. Plaintiff's license to engage in private security work is a privilege granted by the state and subject to statutory law and reasonable and proper rules of the Department of State Police. *Ranke* v. *Corporation & Securities Commission, supra; Coffman* v. *State Board of Examiners in Optometry, supra.* Plaintiff is entitled, however, to a judgment declaring Rule 5 invalid. Appropriate injunctive relief should also issue.

Judge LESINSKI concurs with this opinion in all respects except the majority's holding regarding validity of the provisions of Rule 3. He reasons that paragraph 3 of § 17 of the act (see footnote 23, *supra*), requiring each licensee to maintain adequate and complete personnel information, is not sufficient

---

[26] In this regard, Rule 6 indicates an intent on the part of the department to apply the correct standard. Rule 6 prohibits the display on an agency vehicle of any emblem "which would be likely to deceive or confuse the public or be identical with an emblem on any law enforcement vehicle."

[27] Judicial review would be pursuant to the contested case provisions of the Administrative Procedure Act. See MCLA §§ 24.104–24,108 (Stat Ann 1969 Rev §§ 3.560[21.4]–3.560[21.8]).

authority for the department to require quarterly personnel reports. The obligation imposed by that section of the act is that records be maintained. The only implied requirement of the provision is that the records will be open to reasonable inspection by the department. Judge LESINSKI additionally notes that he finds that § 24[28] sets forth the scope of reporting required under the act. It is Judge LESINSKI's position that the department's rule is for the convenience of the department and not essential to the enforcement of the act.

Reversed and remanded for proceedings not inconsistent with this opinion. No costs, a public question being involved.

DANHOF, J., concurred. LESINSKI, C. J., concurred to the extent stated above.

---

[28] MCLA 1969 Cum Supp § 338.1074 (Stat Ann 1969 Cum Supp § 18.185[24]).