MICHIGAN ASSOCIATION OF HOME BUILDERS v
DIRECTOR OF DEPARTMENT OF LABOR & ECONOMIC GROWTH

Docket No. 267376. Submitted June 5, 2007, at Lansing. Decided August
28, 2007, at 9:05 a.m. Leave to appeal sought.

The Michigan Association of Home Builders brought an action for
declaratory and injunctive relief in the Ingham Circuit Court
against the Director of the Department of Labor & Economic
Growth and the department, challenging the defendants' legal
authority to revise the Michigan Uniform Energy Code (MUEC) by
adopting certain standards of the International Residential Code.
The complaint asserted that the defendants ignored the Legisla-
ture's direction and promulgated a new MUEC that did not meet
the statutory requirement of cost effectiveness provided in MCL
125.1504(3)(f) and (g). The plaintiffs alleged that the defendants
were arbitrary and capricious and exceeded the scope of their
statutory authority. The Michigan Community Action Agency
Association, the Michigan Environmental Council, and the Mid-
west Energy Efficiency Alliance were allowed to intervene as
defendants. During subsequent discovery in anticipation of a
bench trial, the plaintiff developed analyses and studies purport-
ing to demonstrate that the code was not cost-effective. The
plaintiff intended to call at trial numerous lay and expert wit-
nesses to testify regarding those analyses and studies. The defen-
dants filed a motion in limine seeking to preclude that testimony,
in part, on the ground that it would be irrelevant because the
witnesses were never part of the department's rulemaking process
and the proposed data, studies, and testimony had never been
submitted to the defendants for consideration. The defendants and
the intervening defendants also requested the court to limit its
review to whether, on the existing administrative rulemaking
record, the revised MUEC was valid. The court, Joyce Dragan-
chuk, J., denied the motion and the request and declared that it
would conduct a review de novo of all the proposed evidence in
order to determine the validity of the code. The court also denied
the intervening defendants' motion for summary disposition,
which motion alleged that the plaintiff was required to exhaust its
administrative remedies before seeking judicial relief. The defen-

dants appealed by leave granted, and the intervening defendants cross-appealed the denial of their motion.

The Court of Appeals *held*:

1. No legal basis exists for the trial court to conduct either a review de novo or a trial de novo in determining whether the defendants' promulgation of the revised MUEC is valid.

2. The trial court's review should be limited to whether the rules are reasonable or bear a rational relationship to the relevant enabling statutes. The substantive validity of a rule adopted by an administrative agency is determined by application of a three-part test: whether the rule is within the subject matter of the enabling statute, whether it complies with the legislative intent underlying the enabling statute, and whether it is arbitrary or capricious. The court's review should be limited to the factual record created by the department during the rulemaking process. In the event that the court determines that the record does not support the department's action, that the department has not considered all relevant factors, or that the rules cannot be evaluated on the basis of the available record, the court should remand the matter to the department for additional investigation or explanation.

3. The trial court's denial of the motion in limine must be reversed.

4. MCL 24.263 governs requests for declaratory rulings from an agency and requires that the requesting person have "an actual state of facts" to bring before the agency for its consideration. The plaintiff could not seek a declaratory ruling because it did not have an actual state of facts to bring before the department. The intervening defendants' motion for summary disposition was properly denied.

Affirmed in part, reversed in part, and remanded.

1. ADMINISTRATIVE LAW — RULES — JUDICIAL REVIEW.

A court determines the substantive validity of a rule adopted by an administrative agency by determining whether the rule is within the subject matter of the enabling statute, whether it complies with the legislative intent underlying the enabling statute, and whether it is arbitrary or capricious; judicial review is limited to whether under this three-part test the rule is reasonable or bears a rational relationship to the underlying act.

2. ADMINISTRATIVE LAW — RULES — JUDICIAL REVIEW.

A court determining the substantive validity of a rule adopted by an administrative agency should limit its review to the factual record

created by the agency during the rulemaking process; the court should remand the matter to the agency for additional investigation or explanation in the event that it determines that the factual record does not support the agency's action, that the agency has not considered all the relevant factors, or that the rule cannot be evaluated on the basis of the available record.

*McClelland & Anderson, L.L.P.* (by *Gregory L. McClelland* and *David E. Pierson*), for the plaintiff.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Richard P. Gartner* and *Susan Przekop-Shaw*, Assistant Attorneys General, for the defendants.

*Clark Hill PLC* (by *Don L. Keskey*) and *Brickfield, Burchette, Ritts and Stone, PC* (by *Christopher G. Mackaronis*), for the Midwest Energy Efficiency Alliance.

*Clark Hill PLC* (by *Don L. Keskey*) for the Michigan Community Action Agency Association and the Michigan Environmental Council.

Before: TALBOT, P.J., and CAVANAGH and METER, JJ.

PER CURIAM. Defendants, Department of Labor & Economic Growth (DLEG) and its director, David C. Hollister, appeal by leave granted an order denying their motion in limine to prohibit plaintiff from submitting at trial evidence not presented to, or considered by, these defendants during the rulemaking process involved in this action. We reverse that order and remand for further proceedings consistent with this opinion. Intervening defendants Michigan Community Action Agency Association (MCAAA), Michigan Environmental Council (MEC), and Midwest Energy Efficiency Alliance (MEEA) cross-appeal the denial of their motion

for summary disposition, pursuant to MCR 2.116(C)(4), premised on the ground that plaintiff failed to exhaust its administrative remedies under the Administrative Procedures Act (APA), MCL 24.201 *et seq*. We affirm the denial of summary disposition.

The Single State Construction Code Act, MCL 125.1501 *et seq*., was enacted in part to create a construction code commission, to authorize the director of the DLEG to promulgate rules, and to prescribe energy conservation standards for the construction industry. The Legislature expressly delegated authority to the director of the DLEG to promulgate rules governing construction standards in this state:

> The director shall prepare and promulgate the state construction code consisting of rules governing the construction, use, and occupation of buildings and structures, including land area incidental to the buildings and structures, the manufacture and installation of building components and equipment, the construction and installation of premanufactured units, the standards and requirements for materials to be used in connection with the units, and other requirements relating to the safety, including safety from fire, and sanitation facilities of the buildings and structures. [MCL 125.1504(1).]

The act provides for the creation of a construction code commission and boards to draft and recommend proposed changes to the code, MCL 125.1503a(1), but it vests the director of the DLEG with "final responsibility for the promulgation of the code." MCL 125.1504(4), and see MCL 125.1503a(4).

The act further provides that "[t]he code shall be designed to effectuate the general purposes of this act and the following objectives and standards," including the provision of "standards and requirements for cost-effective energy efficiency," and "[u]pon periodic review, to continue to seek ever-improving, cost-effective en-

ergy efficiencies." MCL 125.1504(3)(f), (g). The act includes the following definition to assist in the promulgation of a "cost-effective" code:

> "Cost-effective", in reference to section 4(3)(f) and (g), means, using the existing energy efficiency standards and requirements as the base of comparison, the economic benefits of the proposed energy efficiency standards and requirements will exceed the economic costs of the requirements of the proposed rules based upon an incremental multiyear analysis. All of the following provisions apply:
>
> (i) The analysis shall take into consideration the perspective of a typical first-time home buyer.
>
> (ii) The analysis shall consider benefits and costs over a 7-year time period.
>
> (iii) The analysis shall not assume fuel price increases in excess of the assumed general rate of inflation.
>
> (iv) The analysis shall assure that the buyer of a home who qualifies to purchase the home before the addition of the energy efficient [sic] standards would still qualify to purchase the same home after the additional cost of the energy-saving construction features.
>
> (v) The analysis shall assure that the costs of principal, interest, taxes, insurance, and utilities will not be greater after the inclusion of the proposed cost of the additional energy-saving construction features required by the proposed energy efficiency rules as opposed to the provisions of the existing energy efficiency rules. [MCL 125.1502a(1)(n).]

To ensure continued cost-effectiveness, the act provides that the director shall add, amend, and rescind rules to update the code not less than once every three years to coincide with the national code change cycle. MCL 125.1504(5).

Following a three-year administrative rulemaking process pursuant to the APA, defendants promulgated a new Michigan Uniform Energy Code (MUEC), adopt-

ing, in part, the energy efficiency standards of Chapter 11 of the International Residential Code (IRC). In early 2004, defendants published a report authored by Patrick Hudson, a DLEG employee, asserting that the revised MUEC met the cost-effectiveness requirements of the act. Following public hearings, defendants finalized adoption of the rules and filed them with the Secretary of State in December 2004, with the intent that the revised code become effective on February 28, 2005. In early 2005, defendants published a second report by Hudson, withdrawing the earlier report, and providing new data verifying the cost-effectiveness of the new code.

On February 4, 2005, before publication of the MUEC, plaintiff filed a complaint for declaratory and injunctive relief, challenging defendants' legal authority to revise the MUEC by adopting standards from the IRC. The complaint asserted that defendants had ignored the Legislature's direction and promulgated a new code that did not meet the statutory requirement of cost-effectiveness in MCL 125.1504(3)(f) and (g). Plaintiff maintained that the new code would require revisions to windows, framing, and insulation components that would greatly add to the cost of new homes. The complaint alleged that defendants' action in promulgating the code was arbitrary and capricious and exceeded the scope of their statutory authority and that the code failed to comply with the statutory requirement of cost-effectiveness.

On February 28, 2005, the circuit court granted plaintiff's request for a preliminary injunction, temporarily barring implementation of the revised MUEC. Thereafter, defendants MCAAA, MEC, and MEEA were allowed to intervene. During subsequent discovery in anticipation of a bench trial, plaintiff developed analy-

ses and studies purporting to demonstrate that the revised MUEC is not cost-effective. In an attempt to establish its claims at trial, plaintiff intended to call numerous lay and expert witnesses to testify that the challenged rules will increase construction costs and that they do not otherwise satisfy the criteria for cost efficiency.

Before trial, defendants filed a motion in limine seeking to preclude the testimony of all of plaintiff's witnesses, in part, on the ground that the testimony would be irrelevant because the witnesses were never part of the DLEG's rulemaking process and the proposed data, studies, and testimony had never been submitted for consideration. Defendants, including the intervening defendants, requested that the circuit court limit its review to whether, on the existing administrative rulemaking record, the DLEG director's revised MUEC was valid. The court denied defendants' request, and declared that it would conduct a review de novo of all proposed evidence to determine the validity of the revised MUEC. Defendants sought leave to appeal to this court, which was granted. Intervening defendants filed a cross-appeal.

Defendants and intervening defendants argue that the circuit court misapprehended the proper scope of judicial review. Rather than conducting a proceeding de novo that results in the admission of evidence that was not known to, or considered by, the DLEG and its director at the time of the rulemaking process, defendants argue that the court must confine its review to the record on which the rulemaking decision was based. We agree. The proper scope of judicial review is a question of law; thus, this Court's review is de novo. *Klinki v Mitsubishi Motors Corp*, 219 Mich App 500, 506; 556 NW2d 528 (1996).

Plaintiff's challenge is to the substantive validity of the revised MUEC. Plaintiff claims that the revised MUEC does not fulfill the statutory mandate of cost-effectiveness and, thus, defendants acted beyond the limits of statutory authorization by adopting the revised MUEC. See MCL 125.1504(3)(f) and (g). The issue here is by what means plaintiff can attempt to prove its accusation. May plaintiff develop a factual record by presenting new evidence in support of its claim that the revised MUEC is not cost-effective? We conclude that plaintiff may not.

It is well-established that the substantive validity of a rule adopted by an administrative agency is determined by application of a three-part test: "(1) whether the rule is within the subject matter of the enabling statute; (2) whether it complies with the legislative intent underlying the enabling statute; and (3) whether it is arbitrary or capricious." *Dykstra v Dep't of Natural Resources*, 198 Mich App 482, 484; 499 NW2d 367 (1993), citing *Luttrell v Dep't of Corrections*, 421 Mich 93, 100; 365 NW2d 74 (1984); see, also, LeDuc, Michigan Administrative Law (2007 cum supp), §§ 4.35, 9.42, pp 222-223, 674-675. This test is consistent with the deferential standard of review of agency rulemaking used by the federal courts, which are empowered to invalidate a rule if it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 USC 706(2)(A).

In his treatise, Mich Admin Law, *supra*, § 4:35, pp 222-223, Thomas M. Cooley Law School Dean Don LeDuc explained the limited scope of judicial review of the factual premises underlying an agency rule:

Factual inquiry in review of rules at this level is most unusual. The normal test is whether the rules are "reasonable"[3] or bear a "rational relationship" to the underlying

statute.[4] It is sometimes said that rules cannot be arbitrary. Whether an agency rule is arbitrary is based on whether the agency "had no reasonable grounds for the exercise of judgment."[5] Rules are validated on the basis for the rules that the agency actually relied on, not on a reasonable basis that is abstractly conceivable,[6] but this does not mean that a factual basis must be found. The review of facts in the rulemaking setting was stated as follow[s] in Mississippi Valley Barge Line Co. v. United States:[7]

"The settled rule is that the findings of the Commission may not be assailed upon appeal to the absence of the evidence upon which they were made . . . . The structure of the rate schedule calls in peculiar measure for the use of that enlightened judgment which the Commission by training and experience is qualified to form . . . . It is not the province of a court to absorb this function to itself . . . . The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." [Citations omitted.][8]

This decision was cited as applicable in Michigan in Sterling Secret Service, Inc.,[9] which is a good general review of the scope of review of rules law used in Michigan and makes no use of any examination of the underlying facts.

---

[3] Mourning v. Family Publications Service, 411 US 356, 93 S Ct 1652, 36 L Ed 2d 318 (1973).

[4] Motor Vehicle Manufacturers Ass'n of United States v. State Farm Mut. Automobile Ins. Co., 463 US 29, 103 S Ct 2856, 77 L Ed 2d 443 (1983).

[5] American Trucking Ass'n v. United States, 344 US 298, 73 S Ct 307, 97 L Ed 337 (1953).

[6] See Bowen v. American Hospital Ass'n, 476 US 610, 106 S Ct 2101, 90 L Ed 2d 584 (1986).

[7] Mississippi Valley Barge Line Co. v. United States, 292 US 282, 54 S Ct 692, 78 L Ed 1260 (1934).

[8] 292 US at 286-287, 54 S Ct at 694, 78 L Ed at 1265.

⁹ Sterling Secret Service, Inc. v. Department of State Police, 20 Mich App 502, 174 NW2d 298 (1969).

---

The federal courts generally limit judicial review to the administrative record already in existence, rather than permitting either review de novo or trial de novo. *Florida Power & Light Co v Lorion*, 470 US 729, 743-744; 105 S Ct 1598; 84 L Ed 2d 643 (1985); *Camp v Pitts*, 411 US 138, 142; 93 S Ct 1241; 36 L Ed 2d 106 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."); *Nat'l Treasury Employees Union v Horner*, 272 US App DC 81, 89; 854 F2d 490 (1988) ("Stated most simply, our task is to determine ... whether [the agency] considered the relevant factors and explained the facts and policy concerns on which it relied, and whether those facts have some basis in the record."); *Norwich Eaton Pharmaceuticals, Inc v Bowen*, 808 F2d 486, 489 (CA 6, 1987). For example, in *Florida Power*, *supra* at 744, the United States Supreme Court stated:

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. *The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.* [Emphasis added.]

Consideration of evidence outside the administrative record may be necessary, however, in "rare circumstances," such as " 'for background information ... or for the limited purposes of ascertaining whether the

agency considered all the relevant factors or fully explicated its course of conduct or grounds of decision.' " *Norwich, supra* at 489 (citation omitted); *Upjohn Mfg Co v Schweiker*, 681 F2d 480, 483 (CA 6, 1982); *Asarco, Inc v US Environmental Protection Agency*, 616 F2d 1153, 1160 (CA 9, 1980) ("It will often be impossible, especially when highly technical matters are involved, for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not.").

In *Citizens to Preserve Overton Park, Inc v Volpe*, 401 US 402; 91 S Ct 814; 28 L Ed 2d 136 (1971), abrogated in part on other grounds by *Califano v Sanders*, 430 US 99, 105 (1977), a citizens' organization challenged the Secretary of Transportation's approval, without factual findings, of a highway through a park under a statute forbidding such a highway if a feasible alternative route exists. Relying on affidavits prepared by the parties, the lower courts found no basis for determining that the secretary had exceeded his authority. The United States Supreme Court remanded the case to the district court, holding that the appropriate standard of review was " 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' " pursuant to 5 USC 706(2)(A), and that review de novo was unwarranted. *Overton Park, supra* at 414. The Court explained that review de novo under 5 USC 706(2)(F)—i.e., whether the secretary's decision was "unwarranted by the facts"—is justified only where the action is adjudicatory and agency fact-finding procedures are inadequate, or where issues not before the agency are raised in a proceeding to enforce agency action in a nonadjudicatory (e.g., rulemaking) setting. *Overton Park, supra* at 415; *Camp, supra* 141-142. Neither situation exists here.

Plaintiff relies on the Michigan Supreme Court's plurality opinion in *Westervelt v Natural Resources Comm*, 402 Mich 412; 263 NW2d 564 (1978), which Dean LeDuc criticized as being "at odds with all others . . . ." Mich Admin Law, *supra*, § 4:35, p 222. In *Westervelt*, the Department of Natural Resources promulgated rules to regulate the use of rented watercraft on portions of rivers designated for nonmotorized watercraft use. The affected rental operators sought a declaratory ruling regarding the validity of the proposed rules, asserting that they were unconstitutional and an invalid delegation of legislative power. In a plurality opinion, the Supreme Court rejected the plaintiffs' delegation argument, but remanded to the circuit court for further proceedings to determine whether the rules were invalid as exceeding the scope of delegated authority. Justice WILLIAMS, in his opinion, noted that the agency had created an extensive factual record, but that only a portion of the stipulated record had been submitted to the circuit court for review. *Westervelt, supra* at 451-452 (opinion by WILLIAMS, J.). The Court directed that on remand the agency's factual record be submitted to the circuit court and that it make certain findings of fact based upon that record. *Id.* at 452.

We find that *Westervelt* is not controlling in this instance. As a plurality opinion, it does not constitute binding precedent. See *Negri v Slotkin*, 397 Mich 105, 109; 244 NW2d 98 (1976). And, the fact-finding requirement cited by Justice WILLIAMS in his opinion is contrary to precedent and its application appears to be limited to the unusual facts of that case. Further, as noted above, Dean LeDuc has strongly criticized Justice WILLIAMS's assertion that an agency must develop a factual record to justify its rules, noting that such an assertion is "foreign to modern judicial doctrine regarding the va-

lidity of rules, which relies on the 'reasonableness' test." Mich Admin Law, *supra*, § 2:10, p 53 n 10.

We conclude that no legal basis exists for the trial court to conduct either a review de novo or a trial de novo in determining whether defendants' promulgation of the revised MUEC is valid. The court's review should be limited to whether, under the three-pronged *Dykstra/Luttrell* test, the rules are " 'reasonable' " or bear a " 'rational relationship' " to the underlying act. Mich Admin Law, *supra*, § 4:35, p 222; see, also, *Toole v Michigan State Bd of Dentistry*, 306 Mich 527, 533-534; 11 NW2d 229 (1943); *Sterling Secret Service, Inc v Dep't of State Police*, 20 Mich App 502, 514; 174 NW2d 298 (1969). In making this determination, the court's review should be limited to the factual record created by the department during the rulemaking process. Given the Legislature's explicit and detailed standards set forth in MCL 125.1502a(1)(n) for determining "cost-effectiveness," neither trial de novo nor review appears necessary. Nonetheless, in the event that the court finds that the factual record does not support the department's action, or that the department has not considered all relevant factors, or that the rules cannot be evaluated on the basis of the available record, the court should remand the matter to the department for additional investigation or explanation. Therefore, the trial court's denial of defendants' motion in limine is reversed.

On cross-appeal, intervening defendants argue that the trial court should have granted their motion for summary disposition because plaintiff was required under the APA, specifically MCL 24.264, to exhaust its administrative remedies before seeking judicial relief. After review de novo, we disagree. See *CAM Constr v Lake Edgewood Condo Ass'n*, 465 Mich 549, 553; 640 NW2d 256 (2002).

MCL 24.264 provides:

> Unless an exclusive procedure or remedy is provided by a statute governing the agency, the validity or applicability of a rule may be determined in an action for declaratory judgment when the court finds that the rule or its threatened application interferes with or impairs, or imminently threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The action shall be filed in the circuit court of the county where the plaintiff resides or has his principal place of business in this state or in the circuit court for Ingham county. The agency shall be made a party to the action. *An action for declaratory judgment may not be commenced under this section unless the plaintiff has first requested the agency for a declaratory ruling and the agency has denied the request or failed to act upon it expeditiously.* This section shall not be construed to prohibit the determination of the validity or applicability of the rule in any other action or proceeding in which its invalidity or inapplicability is asserted. [Emphasis supplied.]

Intervening defendants argue on appeal that plaintiff was required by the plain language of MCL 24.264 to request a declaratory ruling from the agency before commencing this action. However, MCL 24.263 governs requests for declaratory rulings and provides:

> On request of an interested person, an agency may issue a declaratory ruling as to the applicability to an actual state of facts of a statute administered by the agency or of a rule or order of the agency. . . . A declaratory ruling is binding on the agency and the person requesting it unless it is altered or set aside by any court. An agency may not retroactively change a declaratory ruling, but nothing in this subsection prevents an agency from prospectively changing a declaratory ruling. A declaratory ruling is subject to judicial review in the same manner as an agency final decision or order in a contested case.

A plain reading of MCL 24.263 requires that an interested person have "an actual state of facts" to

bring before the agency for its consideration. Here, plaintiff did not have an "actual state of facts" to bring before the DLEG. Therefore, plaintiff could not seek a declaratory ruling before seeking judicial relief. Thus, intervening defendants' motion for summary disposition premised on this ground was properly denied. To the extent that intervening defendants argue that the trial court incorrectly concluded that these provisions of the APA only apply to contested cases, we need not decide that issue. The court properly denied summary disposition premised on these provisions, even if for a wrong reason. See *Mulholland v DEC Int'l Corp*, 432 Mich 395, 411 n 10; 443 NW2d 340 (1989).

Reversed in part and affirmed in part. Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.