INSURANCE INSTITUTE OF MICHIGAN v COMMISSIONER
OF THE OFFICE OF FINANCIAL AND INSURANCE SERVICES

Docket No. 262385. Submitted October 10, 2006, at Lansing. Decided
August 21, 2008, at 9:05 a.m. Leave to appeal sought.

The Insurance Institute of Michigan and others brought an action in
the Barry Circuit Court against the Commissioner of the Office of
Financial and Insurance Services (OFIS), seeking declaratory and
injunctive relief against the defendant as a result of certain admin-
istrative rules promulgated by the commissioner that require insur-
ers to stop using "insurance scoring," the use of an insured's credit
information for the purpose of predicting the future loss exposure of
the individual insured, as a rating factor. The Michigan Insurance
Coalition and Citizens Insurance Company of America were allowed
to intervene in the action as plaintiffs. The court, James H. Fisher, J.,
granted declaratory relief in favor of the plaintiffs, determining that
the rules were illegal, invalid, and unenforceable, and permanently
enjoined the defendant from enforcing the rules against any of the
plaintiffs or intervening plaintiffs. The defendant appealed, asserting
that the validity of the rules may only be reviewed by petition for
judicial review in the manner provided by § 101 of the Administrative
Procedures Act (APA), MCL 24.301, and that under § 104 of the APA,
MCL 24.304, such review is confined to the agency record. The
defendant maintained that the circuit court erred in entertaining the
plaintiffs' original action and in failing to consider the agency record.
In addition, the defendant asserted that, even if an original action
were proper, the plaintiffs failed to comply with the requirement of
§ 64 of the APA, MCL 24.264, that a plaintiff first request a declara-
tory ruling from the agency.

The Court of Appeals *held*:

1. This matter was properly before the circuit court.

2. The circuit court erred in failing to limit its review to the
administrative record.

3. The opinion and order granting the permanent injunction
must be vacated.

Vacated.

WHITE, P.J., concluded that the circuit court erred in failing to base its review on the administrative record and in accepting additional evidence, and further erred in its conclusions on the merits, at least with regard to insurance issued under chapter 21 of the Insurance Code, MCL 500.2101 to 500.2138. Therefore, the circuit court's order and injunction with regard to insurance under chapter 21 should be reversed, the order and injunction with regard to insurance issued under chapter 24, MCL 500.2400 to 500.2484, and chapter 26, MCL 500.2600 to 500.2674, of the Insurance Code should be vacated, and the matter should be remanded for further proceedings.

ZAHRA, J., concluded that the circuit court properly entertained the plaintiffs' original action challenging the legality of the rules and that the court erred in rejecting the administrative record and by creating its own record. However, the error regarding the record was harmless because the issue resolved by the circuit court was a purely legal question. The OFIS exceeded its statutory authority in promulgating the rules; therefore, the circuit court properly concluded that the rules are illegal and invalid. The opinion and order of the circuit court should be affirmed.

KELLY, J., concluded that the circuit court erred in failing to limit its review to the administrative record and the opinion and order granting a permanent injunction should be vacated for that reason alone. This matter was not properly before the circuit court because the court erred in permitting the plaintiffs to proceed by way of an original action. The case should be dismissed without prejudice to allow the plaintiffs to file a petition for review under MCL 500.244.

*Dickinson Wright PLLC* (by *Peter H. Ellsworth, Jeffery V. Stuckey,* and *Allen L. Lanstra, Jr.*) for the plaintiffs.

*Dykema Gossett PLLC* (by *Lori McAllister* and *Kurt D. Gallinger*) for the intervening plaintiffs.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *William A. Chenoweth*, Assistant Attorney General, for the defendant.

Amici Curiae:

*McClelland & Anderson, LLP* (by *Gregory L. McClelland* and *David E. Pierson*), for the Michigan Association of Home Builders.

*Dilley Haney, P.C.* (by *Troy W. Haney*), and *Law Offices of Robert June, P.C.* (by *Robert B. June*), for the Michigan House Democratic Caucus.

Before: WHITE, P.J., and ZAHRA and KELLY, JJ.

WHITE, P.J. In this action for a declaratory judgment, defendant, Commissioner of the Office of Financial and Insurance Services (OFIS), appeals as of right the circuit court's opinion and order granting a permanent injunction to plaintiffs and intervening plaintiffs. The circuit court declared certain administrative rules (rules) promulgated by defendant commissioner illegal, invalid, and unenforceable, and permanently enjoined defendant from enforcing the rules against any plaintiff or intervening plaintiff in the action. The members of this panel have come to different conclusions regarding the issues presented, and have written three separate opinions. Because Judge KELLY concludes that the circuit court erred in permitting plaintiffs to maintain an original action and would vacate the circuit court's order on that basis, and I conclude that the circuit court erred in failing to base its review on the administrative record, and in accepting additional evidence, and further erred in its conclusions on the merits, at least with regard to insurance issued under chapter 21 of the Insurance Code, this Court vacates the circuit court's order granting a permanent injunction and declaring defendant's rules illegal, unenforceable, and void, and lifts the stay imposed on defendant commissioner's enforcement of the rules.

I

A significant issue facing defendant commissioner when she assumed office in April 2003 was the use by

insurance companies of credit report scores in setting
policyholder rates (referred to as "insurance scoring").[1]

---

[1] The practice of insurance scoring is explained in the report of the
OFIS defendant submitted to the Legislature's Joint Committee on
Administrative Rules, referred to later in this opinion:

2. Purpose for the proposed rules and background:

Over the past five or more years, insurers in Michigan have
gradually implemented a rating system for private passenger
automobile, home, and other personal lines of insurance that
classifies or rates consumers in part by use of information con-
tained in the consumer's credit report. Through data calls, filings,
public hearings, consumer complaints, and research on this sub-
ject, the Office of Financial and Insurance Services (OFIS) has
gathered information that establishes that Michigan insurers have
increased their base rates over the same period of time in part to
provide a discount or tiers of discounts for consumers with
particular insurance credit scores or a particular score within a
range of insurance credit scores. Insurers arrive at insurance
credit scores by applying to the consumer's credit report or credit
information a model or formula either developed in house or
purchased from Fair Isaac, ChoicePoint, or another vendor. Insur-
ers usually secure the consumer's credit report from one of the
three major consumer reporting agencies—TransUnion, Experion
[sic], or Equifax—though insurers may also consult other, smaller
consumer reporting agencies for information. Each insurance
company factors credit information into its classification system
and may use different credit factors or attach different weights to
different credit factors when rating for automobile, home, or other
personal lines policies. To arrive at the premium charged an
individual consumer, generally insurers use a "good" credit score
to grant a larger percentage "discount" from the base rate, while
a "poor" credit score results in a much smaller discount or no
discount at all from the base rate.

The consumer typically receives a premium notice or quote
stating that credit information has been used in arriving at the
premium and referring the consumer to a toll-free telephone
number for the consumer reporting agency that supplied the credit
report. A consumer questioning the premium charged must secure
his or her credit report, check it for accuracy, dispute any inaccu-
racies, and upon getting an error corrected, then request the
insurer to refigure the premium charged, all without access to the

Defendant's predecessor, Commissioner Frank M.

particular scoring model used by the insurer. Consumers with poor credit and consumers without current credit records—often the young and the old but also many other people who for one reason or another do not choose to borrow money at all or do not borrow from lenders who report to credit reporting agencies—find themselves charged more for automobile, home, or other personal lines of insurance because they do not qualify for any "good credit" discount. Additionally, in selling group coverage, some insurers impose a surcharge on persons with low insurance credit scores.

The purposes of [the] Essential Insurance [Act] are identified in the title to the Insurance Code of 1956, 1956 PA 218, MCL 500.100 et seq. (Insurance Code), as follows:

". . to provide for the continued availability and affordability of automobile insurance and home insurance in this state and to facilitate the purchase of that insurance by all residents of the state at fair and reasonable rates."

Insurance Credit Scoring is being used in rates filed under the Essential Insurance Act, Chapter 21 of the Insurance Code, MCL 500.2101 to 500.2131 (applicable to individual automobile and home insurance); Chapter 24 . . . for casualty policies, MCL 500.2400 to 500.2484 (applicable to group automobile and home insurance and the other personal lines covering mobile homes, rental properties, recreational vehicles, motorcycles, and boats); and Chapter 26 . . . for property policies, MCL 500.2600 to 500.2674 (applicable to group home insurance and the other personal lines also subject to Chapter 24). Since Michigan is a "file and use" state, insurers file their classifications and rates and begin to use them, without prior approval of the Commissioner. MCL 500.2106, MCL 500.2430, MCL 500.2628.

MCL 500.2109 requires that rates for automobile and home insurance "shall not be excessive, inadequate, or unfairly discriminatory;" and MCL 500.2109(1)(c) provides:

"A rate for a coverage is unfairly discriminatory in relation to another rate for the same coverage if the differential between the rates is not reasonably justified by differences in losses, expenses, or both, or by difference in the uncertainty of loss, for the individuals or risks to which the rates apply. A reasonable justification shall be supported by a reasonable classification system; by sound actuarial principles when applicable; and by actual and

Fitzgerald, had addressed the issue by conducting a

credible loss and expense statistics or, in the case of new coverages and classifications, by reasonably anticipated loss and expense experience."

The same standard for "unfairly discriminatory" appears verbatim in Chapter 24, MCL 500.2403(1)(d), and in Chapter 26, MCL 500.2603(1)(d), for group automobile, group home, and other personal lines subject to those chapters. . . .

Except for those companies exempt under MCL 500.2129, Michigan does not allow the use of insurance credit scoring to refuse to write an individual or group automobile or home policy, cancel a policy, or non-renew a policy. MCL 500.2117 (home), MCL 500.2118 (automobile), MCL 500.2105 (group).

MCL 500.2111 provides an exclusive list of the classifications or rating factors an automobile insurer and a home insurer may use, with the proviso in subsection (9) that an insurer may use additional factors only if the Commissioner finds, after an Administrative Procedures Act contested case hearing that the factors "would encourage innovation, would encourage insureds to minimize the risk of loss from hazards insured against, and would be consistent with the purposes of this chapter." Insurance credit scoring is not among the factors specified in MCL 500.2111, and no automobile or home insurer has requested of the Commissioner a contested case hearing and an opportunity to prove that insurance credit scoring meets the quoted requirements of subsection (9).

MCL 500.2110a is the only statutory provision possibly justifying or authorizing the use of insurance credit scoring in Michigan. It states:

"If uniformly applied to all its insureds, an insurer may establish and maintain a premium discount plan utilizing factors in addition to those permitted by section 2111 for insurance if the plan is consistent with the purposes of this act and reflects reasonably anticipated reductions in losses or expenses. . . ."

Under this section, the premium discount plan must be uniformly applied, be consistent with the purposes of the act, and reflect reasonably anticipated **reductions** in losses or expenses. Insurers typically grant premium discounts for safety equipment such as anti-lock breaks [sic], smoke alarms, or security systems, i.e.[,] items the presence of which might actually reduce losses.

review of insurance scoring and issuing a bulletin on February 14, 2003, "directing insurers to take eight specific actions to comply with the above statutes if they chose to continue using insurance credit scoring."

As a result of an increase in consumer complaints, defendant conducted another review of insurance scoring, and ultimately decided to address the practice by proposing administrative rules. Defendant held four public hearings in July 2004; 418 persons attended and more than 800 persons submitted written comment (an unprecedented number in the OFIS's history, according to defendant). A number of insurance industry representatives testified at the hearings or submitted written documentation.

On October 1, 2004, after the four public hearings, defendant submitted the proposed rules to the Office of Regulatory Reform (ORR)[2] along with the OFIS report. The ORR certified that the proposed rules were legal on January 4, 2005. Defendant formally adopted the rules on January 18, 2005. The Michigan Legislature's Joint Committee on Administrative Rules sent Governor Jennifer M. Granholm a notice of objection to the proposed

Though business and industry arguing for the use of insurance credit scoring invariably assert a correlation between low credit scores and increased frequency of claims and occasionally extrapolate that correlation to another claimed correlation between low credit scores and the increased cost of claims, no insurer and or entity conducting studies of credit scoring for insurers has yet to present any data even suggesting, much less proving, that the use of insurance credit scoring results in a **reduction** in losses.

In fact, OFIS has the statements of at least two insurers (who are on record as being opposed to this rule set) in which they admit that the use of insurance credit scoring does not result in a reduction in losses.

[2] The ORR was abolished by Executive Order No. 2005-1, and is now the State Office of Administrative Hearings and Rules.

rules on February 17, 2005, stating that the "[c]ommittee has affirmatively determined by a concurrent majority vote that" (1) the agency is exceeding the statutory scope of its rulemaking authority, (2) the rules are in conflict with the Insurance Code of 1956, and (3) the rules are arbitrary and capricious. However, the Legislature failed to pass legislation preventing implementation of the rules.

The ORR filed the rules with the Secretary of State on March 25, 2005.[3] Plaintiffs filed a complaint for

---

[3] The rules, Mich Admin Code, R 500.2151 through 500.2155, provided:

R 500.2151 Definitions.

Rule 1. As used in these rules:

(1) "Insurance score" means a number, rating, or grouping of risks that is based in whole or in part on credit information for the purposes of predicting the future loss exposure of an individual applicant or insured.

(2) "Personal insurance" means private passenger automobile, homeowners, motorcycle, boat, personal watercraft, snowmobile, recreational vehicle, mobile-homeowners and non-commercial dwelling fire insurance policies. "Personal insurance" only includes policies underwritten on an individual or group basis for personal, family, or household use.

R 500.2152 Scope.

Rule 2. These rules apply to personal insurance.

R 500.2153 Use prohibited.

Rule 3. (1) For new or renewal policies effective on and after July 1, 2005, an insurer in the conduct of its business or activities shall not use an insurance score as a rating factor.

(2) For new and renewal policies effective on and after July 1, 2005, an insurer in the conduct of its business or activities shall not use an insurance score as a basis to refuse to insure, refuse to continue to insure, or limit coverage available.

declaratory and injunctive relief on March 29, 2005, challenging the validity of the rules, and a motion for a preliminary injunction. The proposed intervenors, Michigan Insurance Coalition and Citizens Insurance Company of America, joined in plaintiffs' motion for a preliminary injunction and filed a motion to intervene as party plaintiffs. The parties stipulated their intervention.[4]

---

R 500.2154 Filing requirements.

Rule 4. (1) For new and renewal policies effective on or after July 1, 2005, an insurer shall adjust base rates in the following manner:

(a) Calculate the sum of earned premium at current rate level for the period January 1, 2004 through December 31, 2004.

(b) Calculate the sum of earned premium at current rate level with all insurance score discounts eliminated for the period January 1, 2004 through December 31, 2004.

(c) Reduce base rates by the factor created from the difference of the number 1 and the ratio of the amount of subdivision (a) to the amount of subdivision (b).

(2) The insurer shall file with the commissioner a certification that it has made the base rate adjustment and documentation describing the calculation of the base rates adjustment. The insurer shall file the certificate and documentation not later than May 1, 2005.

R 500.2155 Failure to make required filing.

Rule 5. If an insurer fails to make the filing required under R 500.2154, in any proceeding challenging a related rate filing, then the insurer shall be subject to the presumption that the rate filing does not conform to rate standards.

[4] Defendant commissioner filed a motion for change of venue, asserting that Ingham, not Barry, County was the proper venue because defendant's principal office is in, and the cause of action arose in, Ingham County. The circuit court denied the motion to change venue and took plaintiffs' motion for an injunction under advisement.

The circuit court's opinion and order granting a permanent injunction held the rules illegal, invalid, and unenforceable and permanently enjoined defendant from enforcing them, stating, in part:

> All parties were given an opportunity to present evidence at the hearing on the Plaintiffs' motion for preliminary injunction on April 15, 2005. The Defendant indicated it did not contest the factual statements contained in Plaintiffs' affidavits, stating that Defendant believed them to be irrelevant. Defendant stated that the records from public hearings conducted by Defendant pursuant to the Administrative Procedures Act were the only relevant evidence the Court should consider.

> *     *     *

> The Court declines to review the record of the public hearings for the reason that it consists largely of position statements and opinions which may not be admissible under the rules of evidence, and more importantly because the Court finds it unnecessary to address whether the rules are arbitrary and capricious as alleged in Count 2 of Plaintiffs' complaint. The Court views the dispositive issues before it as questions of the legality of the Defendant's rules, given the Commissioner's rule-making authority.

> *     *     *

> Implementation of the OFIS rules would cause irreparable loss to Plaintiffs because Plaintiffs would incur the expenditure of millions of dollars in unrecoverable implementation costs and also because they would cause disruption of the entire casualty insurance market in the State of Michigan.

> IT IS ORDERED that Plaintiffs' request for declaratory relief is granted, and the OFIS rules, R 500.2151-2155 are declared illegal, invalid, and unenforceable.

> IT IS FURTHER ORDERED that Defendant is permanently enjoined from enforcing these rules against any Plaintiff in this action.

II

Defendant asserts that the validity of the OFIS rules may only be reviewed by petition for judicial review in the manner provided by § 101 of the Administrative Procedures Act (APA), MCL 24.301, and that under § 104 of the APA, MCL 24.304, such review is confined to the agency record. Thus, defendant maintains, the circuit court erred in entertaining plaintiffs' original action and, additionally, in refusing to consider the agency record. Defendant further asserts that even if an original action were proper, plaintiffs nevertheless failed to comply with the requirement of MCL 24.264 that a plaintiff first request a declaratory ruling from the agency. Notwithstanding the foregoing arguments, however, defendant asserts that although the circuit court erred in entertaining the action and in refusing to consider the agency record, this Court, nevertheless, should address the substantive issues and reverse the determination that the rules are invalid.

Plaintiffs assert that MCL 500.244(1) does not provide an exclusive procedure or remedy for challenging the validity and legality of the rules and that an original action under MCL 24.264 was proper because no judicial or quasi-judicial function was involved; rather, defendant was acting in a quasi-legislative capacity in promulgating the rules. Further, there is no need to request a declaratory ruling where the validity, rather than the applicability, of rules is at issue.

A

MCL 24.264 (§ 64 of chapter 3 of the APA) addresses declaratory judgment actions regarding the validity or applicability of administrative rules and provides:

*Unless an exclusive procedure or remedy is provided by a statute governing the agency,* the validity or applicability of a rule may be determined in an action for declaratory judgment when the court finds that the rule or its threatened application interferes with or impairs, or imminently threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The action shall be filed in the circuit court of the county where the plaintiff resides or has his principal place of business in this state or in the circuit court for Ingham County. The agency shall be made a party to the action. *An action for declaratory judgment may not be commenced under this section unless the plaintiff has first requested the agency for a declaratory ruling and the agency has denied the request or failed to act upon it expeditiously.* This section shall not be construed to prohibit the determination of the validity or applicability of the rule in any other action or proceeding in which its invalidity or inapplicability is asserted. [Emphasis added.]

Section 244(1) of the Insurance Code, MCL 500.244(1), provides:

A person aggrieved by a final order, decision, finding, ruling, opinion, *rule,* action, or inaction provided for under this act may seek judicial review in the manner provided for in chapter 6 of the administrative procedures act of 1969, 1969 PA 306, MCL 24.301 to 24.306. [Emphasis added.]

Chapter 6 of the APA provides, in pertinent part:

When a person has exhausted all administrative remedies available within an agency, and is aggrieved by a final decision or order in a contested case, whether such decision or order is affirmative or negative in form, the decision or order is subject to direct review by the courts as provided by law. Exhaustion of administrative remedies does not require the filing of a motion or application for rehearing or reconsideration unless the agency rules require the filing before judicial review is sought. A preliminary, procedural or intermediate agency action or ruling is not immediately reviewable, except that the court may grant leave for

review of such action if review of the agency's final decision or order would not provide an adequate remedy. [MCL 24.301.]

Judicial review of a final decision or order in a contested case shall be by any applicable special statutory review proceeding in any court specified by statute and in accordance with the general court rules. In the absence or inadequacy thereof, judicial review shall be by a petition for review in accordance with [MCL 24.303 to 24.305]. [MCL 24.302.]

Except as provided in subsection (2), a petition for review shall be filed in the circuit court for the county where petitioner resides or has his or her principal place of business in this state, or in the circuit court for Ingham county. [MCL 24.303(1).]

The review shall be conducted by the court without a jury *and shall be confined to the record.* In a case of alleged irregularity in procedure before the agency, not shown in the record,[5] proof thereof may be taken by the court. The court, on request, shall hear oral arguments and receive written briefs. [MCL 24.304(3) (emphasis added).]

B

In *Northwestern Nat'l Cas Co v Comm'r of Ins,* 231 Mich App 483, 495-496; 586 NW2d 563 (1998) (*Northwestern*), this Court held that MCL 500.244(1) establishes the exclusive procedure for challenging the insurance commissioner's decisions. The plaintiff insurance companies had challenged an administrative decision of the insurance commissioner rejecting their applications for requalification by filing both a petition for review under MCL 500.244 and chapter 6 of the APA and an original action in the circuit court. The circuit court dismissed the original action, concluding that the plain-

---

[5] Plaintiffs did not allege any such irregularity.

tiff insurance companies were limited to a petition for review. This Court affirmed, noting:

> The commissioner's decisions may be challenged only as provided in the Insurance Code, i.e., "in the manner provided for in chapter 6 of the administrative procedures act . . . ." MCL 500.244(1); MSA 24.1244(1). Under the APA, administrative decisions are "subject to *direct review* by the courts as provided by law." MCL 24.301; MSA 3.560(201) (emphasis added). Review is to be sought by filing a petition for review, MCL 24.302; MSA 3.560(202), in the circuit court, MCL 24.303(1); MSA 3.560(203)(1), within sixty days of the date when the agency's decision was mailed, MCL 24.304(1); MSA 3.560(204)(1). Clearly, an independent action attacking the agency's decision is not contemplated. [*Northwestern, supra* at 495-496 (footnote omitted).]

In the instant case, plaintiff insurers contend that *Northwestern* involved an "adjudicatory" action, while this case involves a "legislative" action, so *Northwestern* does not control. In *Bio-Magnetic Resonance, Inc v Dep't of Pub Health,* 234 Mich App 225, 232 n 7; 593 NW2d 641 (1999), this Court, in passing, referred to *Northwestern* as involving review of agency action that is judicial or quasi-judicial. While *Northwestern* did involve agency action that was judicial or quasi-judicial, the *Northwestern* Court made no such distinction in considering whether an original action could be maintained.

C

My colleagues disagree over whether plaintiffs properly commenced an original action, rather than a petition for review. Judge KELLY, following *Northwestern,* concludes that MCL 500.244(1) provides the exclusive procedure for challenging a rule promulgated by defendant, as well as defendant's other actions and decisions.

Judge Zahra agrees with plaintiffs that *Northwestern,* does not decide the question because that case involved a challenge to quasi-judicial action of the insurance commissioner, rather than the validity of a rule. In my view, *Northwestern* stands for the proposition that decisions of the insurance commissioner, even when not the product of a contested case proceeding under chapter 4 of the APA, are still to be reviewed pursuant to the procedure set forth in chapter 6 of the APA—by filing a petition for review in the circuit court—and cannot be challenged by way of an independent action in circuit court, although the standard of review depends on whether a hearing was required. *Northwestern* recognized the distinction between review of agency action that is quasi-legislative, such as rulemaking, and agency action that is quasi-judicial, and that the latter was involved in *Northwestern, supra* at 489 n 1, but it did not address whether MCL 500.244 provides the exclusive procedure and remedy for challenging the validity of a rule. Thus, I find *Northwestern* informative, but not controlling, and conclude that our decision should be based on an examination of the statutes themselves.

D

The Legislature referred to the APA throughout the Insurance Code, making the insurance commissioner subject to the act when promulgating rules, imposing penalties, and conducting hearings.[6] Section 64 of the

---

[6] MCL 500.210 provides:

> The commissioner shall promulgate rules and regulations in addition to those now specifically provided for by statute as he may deem necessary to effectuate the purposes and to execute and enforce the provisions of the insurance laws of this state in accordance with the provisions of Act No. 88 of the Public Acts of

APA, MCL 24.264, the declaratory judgment provision, is found in chapter 3 of the APA, which sets forth the procedures to be followed by an agency in promulgating rules, the procedure for review of rules by the Legislature, the procedures for publishing rules, and the effect of rules filed under these procedures. At the end of chapter 3, the Legislature provided, in § 63, MCL 24.263, that an interested person may seek a declaratory ruling from an agency regarding the applicability of a rule, which ruling is subject to judicial review under chapter 6 of the APA, and, in § 64, that unless an exclusive procedure or remedy is provided by a statute governing the agency, the validity or applicability of a rule may be determined in an action for declaratory judgment.

Before 1992, § 244 of the Insurance Code, MCL 500.244, provided:

> (1) Any final order or decision made, issued, or executed by the commissioner under this insurance code shall be subject to review, after hearing had before the commissioner or a deputy commissioner without leave by the circuit court of Ingham county or the circuit court of the county in which the principal office in this state of the insurer aggrieved by such order or decision is located, or where the person resides against whom such order is directed.
>
> (2) A petition as of right for the review of such order or decision shall be filed within 30 days .... If no such petition for review is filed within the said 30 days, the party

---

1943, as amended, being sections 24.71 to 24.80 of the Compiled Laws of 1948, and subject to Act No. 197 of the Public Acts of 1952, as amended, being sections 24.101 to 24.110 of the Compiled Laws of 1948.

The acts referenced in this section are provisions that have since been repealed and replaced with the Administrative Procedures Act of 1969, MCL 24.201 *et seq*. MCL 24.312 provides that any reference to these acts is deemed to be a reference to the APA of 1969.

aggrieved shall be deemed to have waived the right to have the merits of the order or decision reviewed, and there shall be no trial of the merits thereof by any court to which application may be made by petition or otherwise. . . .

(3) The cause shall be heard before the said court as a civil case in chancery upon such transcript of the record and such additional evidence as may be offered by any of the parties at the hearing of said cause before the court. It shall be the duty of the court to hear and determine such petition with all convenient speed. . . . The court shall have the jurisdiction to affirm, modify, or to set aside the order or decision of the commissioner and to restrain the enforcement thereof.

Thus, before 1992, a party aggrieved by an order or decision of the insurance commissioner made after a hearing had a right under MCL 500.244(1) to challenge that decision in circuit court. And, in contrast to a petition for review under chapter 6 of the APA, that review was not confined to the record made before the agency. Rather, the case was heard "as a civil case in chancery upon such transcript of the record and such additional evidence as may be offered by any of the parties at the hearing . . . ." MCL 500.244(3).

The 1992 amendment of MCL 500.244 effected a number of changes. First, it eliminated the special procedure for obtaining review of a decision of the insurance commissioner and, instead, provided for review under chapter 6 of the APA. Second, in so doing, it eliminated the right to make a record before the circuit court and provided that review would be confined to the record made before the agency. Third, it eliminated the reference to the decision of the insurance commissioner having been made after a hearing,[7] thus extending the

---

[7] In *Blue Cross & Blue Shield of Michigan v Comm'r of Ins*, 155 Mich App 723, 729; 400 NW2d 638 (1986), this Court held that review of the

provision to decisions and actions of the insurance commissioner even in cases where a hearing is not required under the Insurance Code.

Under the former version of MCL 500.244(1), an action for declaratory judgment under § 64 of the APA would have been permissible because the Insurance Code, MCL 500.244(1), did not provide an exclusive procedure or remedy for determining whether a rule was applicable or valid. And, were it not for the inclusion of the word "rule" in the present version of MCL 500.244(1), it still would be clear that plaintiffs could properly challenge the validity of the rules by commencing an original action for declaratory judgment under § 64 of the APA. The question is whether the inclusion of "rule" in the actions of the insurance commissioner reviewable by petition for judicial review, and deletion of language confining the section's application to cases in which there has been a hearing, shows a legislative intent to provide that judicial review under chapter 6 of the APA is the exclusive procedure for challenging the validity of a rule, to the exclusion of § 64 of chapter 3 of the APA, which otherwise would be, and had been, applicable. Given the Insurance Code's general incorporation of the provisions of the APA, and specifically the provisions concerning rules, I conclude that the Legislature did not so intend.

MCL 500.244 does not state that a rule may only be challenged by a petition for review under chapter 6 of the APA, and does not explicitly preclude an action for a declaratory judgment under chapter 3 of the APA. On the other hand, it can be argued that having provided for judicial review under chapter 6 for a person aggrieved by a rule of the insurance commissioner, the

---

commissioner's decision was not under MCL 500.244(1), but rather under MCL 600.631, because there had been no hearing.

Legislature intended that that procedure be followed exclusively. I agree that none of the other enumerated actions of the commissioner can be reviewed by commencing an independent action in circuit court. But this is not so much because MCL 500.244(1) provides an exclusive means of review as it is because the APA contemplates that agency actions will be reviewed in accordance with the APA when the statute governing the agency so provides, and MCL 500.244(1) so provides. It is a separate question whether an action under § 64 of chapter 3 of the APA is also permissible where applicable by its terms.

I conclude that MCL 500.244(1) does not provide an exclusive remedy or procedure for challenging the validity or legality of a rule. Rather, it provides that a person aggrieved by an action or decision, or even rule, of the insurance commissioner may seek judicial review under chapter 6 of the APA. It does not follow that a person may not seek a declaration that a rule is invalid under chapter 3 of the APA where the underlying statute otherwise incorporates the provisions of chapter 3, as does the Insurance Code. I also observe that MCL 500.244(1) refers to a person *aggrieved* by a final order, decision, finding, ruling, opinion, rule, action, or inaction provided for under the act. Plaintiffs are not aggrieved by the rules because the rules have not yet been applied to them, and they have not yet been subjected to any consequences. If they are not yet aggrieved, any challenge they have is not ripe for a petition for review under chapter 6 of the APA, and must be pursued as an action for a declaratory judgment under § 64 of chapter 3 of the APA. This is consistent with both the Insurance Code and the APA.

E

Having found that an action for a declaratory judgment pursuant to § 64 could properly be maintained, I conclude

that in the instant case, the question whether the validity
of the rules could properly be challenged in this manner,
rather than by petition for judicial review under chapter 6
of the APA, is largely irrelevant because in either case the
standard of review and the record upon which review
must be conducted are identical. And, because in either
case jurisdiction is in the circuit court,[8] the court could
have treated the complaint as a petition for judicial
review if it deemed that appropriate.[9] In either case, the
court erred by failing to confine its review to the
administrative record.

---

[8] This action was filed within 60 days of the ORR's filing of the rules
with the Secretary of State, although not within 60 days of the commis-
sioner's adopting them. This illustrates the difficulty in applying the
chapter 6 judicial review provisions to a challenge to a rule, because an
agency's action in promulgating a rule is subject to additional review
before the rule is effective, but the time for seeking judicial review is
measured from the date of mailing notice of the final decision or action of
the agency.

[9] Under § 64, the question arises whether plaintiffs were required to first
request a declaratory ruling from defendant before filing an action for a
declaratory judgment in circuit court. MCL 24.264, quoted earlier in this
opinion, explicitly states that such a request is a necessary precondition to
filing an action for a declaratory judgment under that section. On the other
hand, Professor Don LeDuc has expressed the view that there is no
exhaustion requirement where the validity, rather than the applicability, of
rules is at issue. See LeDuc, Michigan Administrative Law, § 8:13, pp
576-577:

**§ 8:13 Challenges to statutes, orders, and validity of
rules**

. . . Section 64 of the Administrative Procedures Act allows the
action for declaratory judgment to determine the validity or
applicability of a rule. Then, it says that the action under Section
64 cannot be brought unless the plaintiff has first requested the
agency for a declaratory ruling and the agency has denied or failed
to act on the request.

First, the section creates an exhaustion problem only for
matters relating to rules, it does not have any reference to the
provisions in Section 63 authorizing declaratory rulings as to the

1

The circuit court erred in adjudicating the validity of the rules on the basis of an evidentiary record made before it. This is so without regard to whether an original action or judicial review was the proper avenue for challenging the rules.

Chapter 6 of the APA explicitly provides in MCL 24.304(3) that judicial review under that chapter is confined to the agency record. See also LeDuc, Michigan Administrative Law, § 9.01, p 597:

[Chapter 9: SCOPE OF JUDICIAL REVIEW]

### § 9:01 Scope of chapter

Scope of judicial review addresses the question of how much a court will undertake to substitute its judgment for that of an agency which has made a decision. How much a court will undertake to second-guess an agency is largely controlled by how it gets the case; the scope of review may be established by the Michigan Constitution, the relevant

applicability of statutes or orders. Those, presumably, may be challenged in an action for declaratory judgment which is not based on Section 64, and which would be subject to the law's limitations on such actions. Since Section 64 only applies to determining the validity or applicability of rules, the language in Section 63 regarding statutes and orders is irrelevant.

Second, Section 63 empowers an agency to issue a declaratory ruling only as to the applicability of a rule, not as to its validity. The reason for this is obvious, an agency is unlikely to find its own rules invalid and those rules are presumed to be valid anyway. Courts will ultimately determine the validity of a rule. Section 64 thus specifically empowers a court to hear an action for a declaratory judgment as to either the validity or applicability of a rule. The exhaustion requirement of Section 64 (requiring resort first to the submission of a declaratory ruling) applies only when a plaintiff wishes to challenge the applicability of a rule to an actual state of facts. Section 63 does not authorize an agency to issue a ruling on the validity of rules, so there is nothing to exhaust.

underlying statute, the Administrative Procedures Act, and the method of review used to get the case into a court.

In most cases, the scope of review is limited to the record made in the administrative proceeding under judicial challenge. An underlying statute may provide that limitation, as does the Administrative Procedures Act [citing MCL 24.304(3)]. Failure to heed those admonitions results in certain reversal [citing *Roman v Secretary of State,* 213 Mich App 592; 540 NW2d 474 (1995)].[10]

Alternatively, accepting that an original action under § 64 of the APA was proper, the circuit court was still required to base its decision on the administrative record, and was without authority to expand that record. In *Michigan Ass'n of Home Builders v Dep't of Labor & Economic Growth Director,* 481 Mich 496 ; 750 NW2d 593 (2008), our Supreme Court recently held that judicial review of a non-contested case, including a challenge to a rule promulgated after public hearings and challenged under § 64 of the APA, is limited to the administrative record, and the administrative record may not be expanded by a remand to the administrative agency. Additionally, the history of MCL 500.244 makes clear that the Legislature intended to abandon the prior procedure in which circuit courts took additional evidence on appeal in favor of judicial review based exclusively on the agency record. Thus, to the extent the circuit court's decision was based on findings gleaned from the record made before it, rather than the administrative record, the decision should be vacated.

I cannot agree with Judge ZAHRA's conclusion that the circuit court's failure to limit its review to the

---

[10] In *Roman,* this Court reversed the circuit court's setting aside of the revocation of the petitioner's driver's license, concluding that judicial review of the Secretary of State's revocation of a driver's license is confined to consideration of the administrative record, which was not provided to the circuit court.

agency record is harmless because plaintiffs assert a purely legal challenge. As discussed later in this opinion, the circuit court's decision was based on conclusions regarding insurance scoring that were based on the record made in the circuit court. This was error.

2

Similarly, the standard governing the judicial determination whether the rules are valid is the same, without regard to the proper form of the challenge. In *Northwestern, supra* at 487-490, this Court discussed the standard of review circuit courts must apply to decisions of the insurance commissioner:

> The Michigan Constitution provides that "[a]ll final decisions . . . of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions . . . are authorized by law; and, *in cases in which a hearing is required,* whether the same are supported by competent, material and substantial evidence on the whole record." Const 1963, art 6, § 28 (emphasis added). Whether "a hearing is required" is determined by reference to the statute governing the particular agency. See *Attorney General v Public Service Comm,* 206 Mich App 290, 293, 295-296; 520 NW2d 636 (1994). "Where no hearing is required, it is not proper for the circuit court *or this Court* to review the evidentiary support of an administrative agency's determination." *Brandon School Dist v Michigan Ed Special Services Ass'n,* 191 Mich App 257, 263; 477 NW2d 138 (1991) (emphasis added); see also LeDuc, Michigan Administrative Law, § 9:02, p 5. In such cases, "[j]udicial review is not de novo and is limited in scope to a determination whether the action of the agency was authorized by law." *Brandon, supra* at 263.

There is apparently much confusion regarding the meaning of this constitutional standard, whether an agency's decision is authorized by law. See LeDuc, § 9.05, pp 9-10. We agree that, in plain English, authorized by law means allowed, permitted, or empowered by law. Black's Law Dictionary (5th ed). Therefore, it seems clear that an agency's decision that "is in violation of statute [or constitution], in excess of the statutory authority or jurisdiction of the agency, made upon unlawful procedures resulting in material prejudice, or is arbitrary and capricious," is a decision that is *not* authorized by law. *Brandon, supra* at 263. We recognize that this interpretation is almost identical to the standards set out in the Administrative Procedures Act (APA). See MCL 24.306(1) . . . ; see also LeDuc (1998 supp), § 9:01, p 128. However, we find that is also a reasonable articulation of the constitutional standard because it focuses on the agency's power and authority to act rather than on the objective correctness of its decision. We therefore adopt the *Brandon* Court's formulation of whether an agency's decision is authorized by law.

As noted by the parties, the Insurance Code provides that "[a] person aggrieved by a final order, decision, finding, ruling, opinion, rule, action, or inaction provided for under this act may seek judicial review *in the manner provided for* in chapter 6 of the [APA]." MCL 500.244(1) . . . (emphasis added). The APA normally provides review only from decisions and orders in contested cases. See MCL 24.301 . . . ; see also *Martin v Stine,* 214 Mich App 403, 409-410; 542 NW2d 884 (1995). As discussed above, the APA's standards of review coincide with the authorized-by-law standard provided in the constitution, but the APA also allows an agency's decision to be set aside if it is "[n]ot supported by competent, material and substantial evidence on the whole record" or if it is "[a]ffected by other substantial and material error of law." MCL 24.306(1)(d) and (f) . . . .

We agree with the commissioner that the Insurance Code incorporates only the procedure provided in the APA and not its standards of review. . . . Therefore, in the present case, because no contested hearing was required or

held, the proper standard of review was that set out in
Const 1963, art 6, § 28 and explained in *Brandon,* not the
substantial evidence test or the substantial and material
error of law test. [Emphasis in original.]

*Northwestern* involved agency action that was judi-
cial or quasi-judicial, and not legislative or quasi-
legislative. It is an open question whether Const 1963,
art 6, § 28, even applies to quasi-legislative administra-
tive actions. See *Luttrell v Dep't of Corrections,* 421
Mich 93, 108-109; 365 NW2d 74 (1984) (RYAN, J.,
concurring). However, whether constitutionally re-
quired or not, this Court has applied a similar test when
reviewing an agency's rulemaking activity. In *Chesa-
peake & O R Co v Pub Service Comm,* 59 Mich App 88,
98-99; 228 NW2d 843 (1975), this Court applied a test
that is similar to the *Brandon* test, stating:

Where an agency is empowered to make rules, courts
employ a three-fold test to determine the validity of the
rules it promulgates: (1) whether the rule is within the
matter covered by the enabling statute; (2) if so, whether it
complies with the underlying legislative intent; and (3) if it
meets the first two requirements, when [sic] it is neither
arbitrary nor capricious.

The *Brandon* and *Chesapeake* tests provide for more
expansive judicial review than if Const 1963, art 6, § 28,
does not apply. In any event, the rules can be subject to
no greater judicial scrutiny than provided in *Brandon*
and *Chesapeake.*

III

Judge KELLY does not reach the merits of the circuit
court's decision. Judge ZAHRA concludes that the circuit
court correctly concluded that defendant exceeded her
rulemaking authority under the Insurance Code. I
conclude that the rules pass muster as applied to

insurance issued under chapter 21 of the Insurance Code. With respect to insurance issued under chapters 24 and 26, I would vacate the circuit court's order and remand for review based on the administrative record. I separately apply the *Brandon* test to the two groups of insurance.

A

Defendant has statutory authority to "promulgate rules and regulations . . . as [she] may deem necessary to effectuate the purposes and to execute and enforce the provisions of the insurance laws of this state in accordance with the provisions of [the APA]." MCL 500.210. The rules are within the matter covered by the enabling statute. Further, the rules were promulgated pursuant to lawful procedures as set forth in the APA. This conclusion applies to insurance under all three chapters.

B

Plaintiffs assert that the rules are in excess of defendant's statutory authority, and are contrary to the legislative intent because they disallow rates without a prior hearing as required by MCL 500.2114, 500.2418, and 500.2618. The circuit court and Judge ZAHRA agree. I reject this argument because defendant concedes that plaintiffs are entitled to contested case hearings if they file rates that are not in compliance with the rules and if defendant disallows the rates on that basis. Admittedly, the hearing would be somewhat limited if the rules are found valid in these proceedings. However, plaintiffs could have eschewed a direct, declaratory challenge to the rules under § 64, and simply filed rates in conflict with the rules. Defendant would then have been obliged to initiate hearings under MCL 500.2114(2). I do not agree with Judge ZAHRA's conclusion that the substance of such hearings would be

confined to the question whether the rates comply with the rules. Rather, I believe the validity of the rules would be subject to challenge in the contested case proceeding. Thus, the only reason the rules have the effect of disallowing rates without a contested case hearing is that plaintiffs chose to preempt application of the rules by challenging them directly. Had they not commenced this proceeding, they would have been free to challenge the validity of the rules in contested case proceedings addressed to the question whether the filed rates meet the requirements of §§ 2109 and 2111 of the Insurance Code, MCL 500.2109 and 500.2111. Thus, I do not agree that the rules impermissibly invalidate rates without a meaningful contested case hearing.

Further, MCL 500.2114, 500.2418, and 500.2618, which provide for contested case hearings where rates are disallowed, are not inconsistent with a conclusion that defendant has authority under MCL 500.210 to conduct public hearings and promulgate rules announcing a conclusion that a certain rating factor or practice violates the Insurance Code, and that insurers should take certain specific actions in order to comply with the Insurance Code in the future. All that is required is that the rules so promulgated be within the statutory authority or jurisdiction of the agency, be made upon lawful procedures, be consistent with the Insurance Code, and not be arbitrary or capricious. Insurers retain the right to file rates in conflict with any such rules and to both defend the rates under the rules and challenge the rules as being invalid in contested case hearings. Thus, I cannot agree with Judge ZAHRA's conclusion that the Insurance Code prohibits the promulgation of rules that affect rates prospectively.[11]

---

[11] I must disagree with Judge ZAHRA's assertion that "[i]n no uncertain terms, the OFIS rules, if deemed valid, would render invalid existing

C

Plaintiffs assert, and the circuit court agreed, that the rules impermissibly lower rates without a finding, as required by MCL 500.2109 and MCL 500.2403, that the rates are excessive. However, the rules simply disallow insurance scoring and provide a formula by which an insurer can satisfy defendant that its rates have been properly adjusted to eliminate the effects of insurance scoring. Plaintiffs have conceded that when the formula is applied, the same total amount of premium dollars is collected; but the premium cost is allocated differently among the insureds. This is not a reduction in rates, but rather a reallocation in premium cost on the basis of the disallowance of a rating factor. Thus, I reject this argument as it relates to insurance issued under all three chapters.

D

Plaintiffs also argue that the rules are contrary to statute and legislative intent because they disallow rates that are in compliance with the Insurance Code. I disagree with regard to insurance governed by chapter 21.

MCL 500.2109, 500.2110, and 500.2111 clearly set forth the rating factors that can be used for automobile and home insurance. Insurance scoring is not among them. Further, the procedure for authorizing the utilization of additional factors set forth in MCL 500.2111(9) was not followed. Plaintiffs assert that

rate filings for all insurers who use insurance scoring to determine their rates." *Post* at 378. By their express terms, the rules have no effect on existing rates, and operate prospectively only. While future rates may be invalidated by the rules, the onus is still on defendant to invalidate any rates that conflict with the rules.

insurance scoring is permissible under MCL 500.2110a, which provides, in pertinent part:

> If uniformly applied to all its insureds, an insurer may establish and maintain a premium discount plan utilizing factors in addition to those permitted by section 2111 for insurance if the plan is consistent with the purposes of this act and reflects reasonably anticipated reductions in losses or expenses.

Defendant asserts, and I agree, that insurance scoring is not a premium discount plan as contemplated by MCL 500.2110a because it does not reflect "reasonably anticipated reductions in losses or expenses." The discount is not given because the insured has taken action, such as purchasing airbags or a theft-deterrent system, which may reduce the insured's losses. Rather, the discount is provided because the insurer has determined that certain characteristics of the insured make it more likely that the insured will make fewer or less costly claims. Pivotal to defendant's reasoning is the fact that with insurance scoring the total amount of premiums collected, and losses paid, remains the same; the base rates are simply adjusted upward to allow plaintiffs to grant discounts, or larger discounts, to those with better insurance scores. The premium cost is thereby shifted from persons with better insurance scores to persons with poorer insurance scores. This is clearly an unapproved rating factor, not a discount. Defendant's construction of MCL 500.2110a is not contrary to law or legislative intent. Further, as applied to insurance issued under chapter 21, the rules reflect a determination that insurance scoring is neither a permissible rating factor under the statute nor a permissible discount. This determination is neither arbitrary nor capricious. I thus conclude that with regard to insurance issued under chapter 21, the circuit court

erred in concluding that the rules are illegal, invalid, and unenforceable because they are beyond defendant's rulemaking authority.

E

Regarding insurance issued under chapter 24, MCL 500.2426 provides:

> No manual of classifications, rule, rating plan, or any modification of any of the foregoing which measures variations in hazards or expense provisions, or both, and which has been filed pursuant to the requirements of this chapter shall be disapproved if the rates thereby produced meet the requirements of section 2403(1)(d) (rate standards).

Regarding insurance issued under chapter 26, MCL 500.2626 provides:

> No manual, minimum, class rate, rating schedule, rating plan, rating rule, or any modification of any of the foregoing which has been filed pursuant to the requirements of [this chapter] shall be disapproved if the rates thereby produced meet the requirements of this chapter.

Sections 2426 and 2626 include the "unfairly discriminatory" standard, which provides:

> Rates shall not be excessive, inadequate, or unfairly discriminatory. A rate shall not be held to be excessive unless the rate is unreasonably high for the insurance coverage provided and a reasonable degree of competition does not exist with respect to the classification, kind, or type of risks to which the rate is applicable. . . . A rate for a coverage is unfairly discriminatory in relation to another rate for the same coverage, if the differential between the rates is not reasonably justified by differences in losses, expenses, or both, or by differences in the uncertainty of loss for the individuals or risks to which the rates apply. A reasonable justification shall be supported by a reasonable classification system; by sound actuarial principles when

applicable; and by actual and credible loss and expense statistics or, in the case of new coverages and classifications, by reasonably anticipated loss and expense experience. A rate is not unfairly discriminatory because the rate reflects differences in expenses for individuals or risks with similar anticipated losses, or because the rate reflects differences in losses for individuals or risks with similar expenses. Rates are not unfairly discriminatory if they are averaged broadly among persons insured on a group, franchise, blanket policy, or similar basis. [MCL 500.2403(1)(d); MCL 500.2603(1)(d).]

Plaintiffs argue, and the circuit court found, that the rules are in excess of defendant's authority because they invalidate rates that otherwise comply with the provisions of chapters 24 and 26, in violation of §§ 2426 and 2626. Defendant asserts that the rules are authorized because they are based on a finding that insurance scoring results in rates that are unfairly discriminatory.

Defendant based the rules on conclusions drawn from her review of the insurance scoring practices of the industry and the hearings held to elicit and consider the responses to her conclusions and proposed rules based thereon. Defendant found that that the underlying data and the operative formulas used by insurance companies are often inaccurate and inconsistent, that consumers are not provided with enough information to question the scoring and resulting premiums, and that the studies relied on by the industry are inadequate and unpersuasive. The circuit court refused to review this determination on the basis of the agency record, stating:

The Court declines to review the record of the public hearings for the reason that it consists largely of position statements and opinions which may not be admissible under the rules of evidence, and more importantly because the Court finds it unnecessary to address whether the rules are arbitrary and capricious as alleged in Count 2 of

Plaintiffs' complaint. The Court views the dispositive issues before it as questions of the legality of the Defendant's rules, given the Commissioner's rule-making authority.

While the circuit court framed the question as a purely legal one, its conclusion that the rules are invalid because they exceed defendant's statutory authority was based on factual conclusions that were based solely on the record made in the circuit court, and which ignored the agency record. The court found as fact that insurance scores accurately reflect differences in risk:

> The Defendant disputes the notion that those with better insurance scores present lower insurance risks and lower insurance costs, but the evidence presented establishes a strong correlation between insurance scores and risk of loss and expenses.

> * * *

> The evidence clearly establishes that, on average, a policyholder with a higher insurance score presents a lower risk and lower expense (due to lower number of claims) than a policyholder with a lower insurance score.

On the basis of this factual finding, the circuit court concluded that the rules are invalid because they disallow rate filings that otherwise comport with the statute:

> Since rating plans utilizing insurance scores measure differences in risk that have a probable effect on losses or expenses, such plans are clearly authorized by the Insurance Code. MCL 500.2403(1)(c); 500.2603(1)(c). The statutory language only requires a probable effect on losses or expenses. The industry's experience clearly shows an _actual_ effect on losses _and_ expenses.

> The Commissioner clearly lacks any authority to adopt a rule banning the use of insurance scores because the Insurance Code states that no rating plan shall be disapproved if the rates meet these rate standard requirements. MCL 500.2426; 500.2626. [Emphasis in original.]

Thus, the circuit court's conclusion that insurance scoring meets the rate standard requirements of MCL 500.2403 and 500.2603 was based on its rejection of defendant's conclusions drawn from the administrative record and its adoption of its own conclusions drawn from the evidence submitted in this action. As discussed earlier, the circuit court was obliged to confine its review to the administrative record. *Michigan Ass'n of Home Builders, supra.*

### CONCLUSION

I would reverse the circuit court's order and injunction with regard to insurance issued under chapter 21, vacate the circuit court's order and injunction with regard to insurance issued under chapters 24 and 26, and remand for proceedings consistent with this opinion concerning such insurance.[12]

The order and injunction of the circuit court should be vacated and the stay imposed on enforcement of the rules should be lifted. I would not retain jurisdiction.

ZAHRA, J. (*concurring in part and dissenting in part*). This case presents challenging issues of administrative and insurance law over which this panel has struggled, as shown by the fact that we resolve this appeal by

---

[12] I observe, however, that both plaintiffs and defendant recognize the value of a contested case in determining to what extent, under what conditions, and with respect to which insurance coverages insurance scores accurately reflect differences in losses and expenses. I note that if defendant were to confine the rules to insurance issued under chapter 21, she could challenge the use of insurance scoring under chapters 24 and 26 through contested case proceedings in accordance with the provisions regarding the disapproval of filings under those chapters. Similarly, in lieu of this challenge to the rules in an action for a declaratory judgment, plaintiffs could seek to establish their illegality in contested case hearings in the defense of their rates when challenged by defendant.

issuing three opinions—a very rare occurrence in this
Court. I respectfully dissent from the decision to
vacate the opinion and order of the lower court. I
conclude that the lower court properly entertained
plaintiffs' original action challenging the legality of
the Office of Financial and Insurance Services (OFIS)
rules. While I agree that the lower court erred in
rejecting the record created by the OFIS and by
creating its own record, I nonetheless conclude that
this error was harmless because the issue resolved by
the lower court was a purely legal question—i.e.,
whether the OFIS exceeded its statutory authority in
promulgating the rules that are the subject of this
litigation. I conclude as a matter of law that the OFIS
exceeded its statutory authority in promulgating its
administrative rules and, thus, the lower court prop-
erly concluded that these rules are illegal and invalid.
I would affirm the opinion and order of the lower
court.

I. PLAINTIFFS PROPERLY ASSERTED AN ORIGINAL ACTION
PURSUANT TO § 64 OF CHAPTER 3 OF THE ADMINISTRATIVE
PROCEDURES ACT, MCL 24.264, TO CONTEST THE VALIDITY
OF RULES PROMULGATED BY THE OFIS

A. MCL 500.244(1) DOES NOT LIMIT PLAINTIFFS' REMEDY
TO AN ACTION UNDER CHAPTER 6 OF THE APA

I agree with Judge WHITE that MCL 500.244(1) does
not bar plaintiffs from asserting a challenge to the
validity of the OFIS rules under chapter 3 of the
Administrative Procedures Act (APA). Section 244(1) of
the Insurance Code, MCL 500.244(1), provides that "[a]
person aggrieved by a final order, decision, finding,
ruling, opinion, rule, action or inaction provided for
under this act may seek judicial review in the manner
provided for in chapter 6 of the administrative proce-
dures act of 1969, 1969 PA 306, MCL 24.301 to 24.306."

Initially, I find that use of the word "may" to describe the availability of judicial review does not, in and of itself, compel the conclusion that the Legislature did not intend an action under chapter 6 of the APA to be the exclusive remedy available to plaintiffs. A person aggrieved by a rule may elect to seek judicial review or may elect to not seek judicial review. The exclusivity of a review process is independent of an aggrieved party's determination whether to pursue a remedy. See *Rinas v Mercer*, 259 Mich App 63, 69; 672 NW2d 542 (2003) (mandatory language cannot be used to address conduct that is elective). However, the absence of express language directing that this remedy be an exclusive one is, in my opinion, dispositive of this question. A plain reading of § 244(1) supports plaintiffs' position. Had the Legislature intended § 244(1) to define an exclusive remedy, it would have expressly stated its conclusion. For example, the Legislature could have simply added the words "the exclusive remedy for" at the beginning of § 244(1) and replaced the words "may seek" with the words "is limited to" and there would be no question that the Legislature intended this section to provide the exclusive remedy available to plaintiffs.

The Legislature has demonstrated in other areas of the law its willingness to use clear and unambiguous language to establish exclusive remedies. See MCL 418.131(1) (workers' compensation exclusive remedy provision); MCL 211.78k (General Property Tax Act review provision). The Legislature's choice of the permissive term "may," coupled with its choice to exclude definitive and mandatory language expressly establishing the remedy provided in § 244(1) as an exclusive remedy, supports the conclusion that § 244(1) of the Insurance Code does not define the exclusive remedy available to a party challenging the validity of a rule promulgated by the OFIS.

Further, the language of chapter 6 of the APA indicates that it is the preferred vehicle for review of "contested cases," as that term is defined in the APA. MCL 24.203(3); see also MCL 24.301 to MCL 24.306. A challenge to the validity of a rule, however, is not accomplished through contested case proceedings. *Michigan Ass'n of Home Builders v Dep't of Labor & Economic Growth Director,* 481 Mich 496; 750 NW2d 593 (2008). Thus, the remedy provided in § 244(1) of the Insurance Code does not define the exclusive remedy available to a party when challenging the validity of a rule promulgated by the OFIS.

Judge KELLY relies on *Northwestern Nat'l Cas Co v Comm'r of Ins,* 231 Mich App 483; 586 NW2d 563 (1998), to support the conclusion that § 244(1) of the Insurance Code limits challenges to the validity of administrative rules to a petition for review. In *Northwestern Nat'l Cas,* two insurance companies appealed an administrative ruling made by the insurance commissioner by filing both a petition for review under § 244(1) of the Insurance Code, MCL 500.244(1), and an original action in the circuit court. The circuit court dismissed the original action, concluding that the insurance companies were limited to a petition for review under § 244(1). This Court affirmed.

*Northwestern Nat'l Cas* is distinguishable primarily because it arose from the exercise of quasi-judicial adjudicative functions of the OFIS, i.e., an action addressing the OFIS commissioner's interpretation and application of administrative rules. By contrast, this case involves a challenge to the "legislative" powers of the OFIS, i.e., a challenge to the validity of the rules created by the OFIS.[1] This distinction is critical. Defer-

---

[1] In *Bio-Magnetic Resonance, Inc v Dep't of Pub Health,* 234 Mich App 225, 233 n 7; 593 NW2d 641 (1999), this Court noted that *Northwestern Nat'l Cas* involved a judicial or quasi-judicial agency action.

ence must be given to the adjudicative findings of administrative agencies. *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 588; 701 NW2d 214 (2005). However, the validity of an administrative rule is resolved as a matter of law by the courts. See LeDuc, Michigan Administrative Law, § 8.13, pp 576-577. Consistent with this notion, our Supreme Court recently held that "an agency's interpretation of a statute is entitled to 'respectful consideration,' but courts may not abdicate their judicial responsibility to interpret statutes by giving unfettered deference to an agency's interpretation. Courts must respect legislative decisions and interpret statutes according to their plain language." *In re Complaint of Rovas Against SBC Michigan*, 482 Mich 90, 93; 754 NW2d 259 (2008). Thus, in reviewing quasi-legislative actions of an administrative agency, there is no sound reason to implement the procedures dictated by chapter 6 of the APA. *Id.*[2]

I also see no merit in the argument that the lower court erred in accepting plaintiffs' original action because § 244(1) of the Insurance Code makes express reference to challenges to a "rule." Where a party contests the application of a rule, review is appropriate by the filing of a contested case under chapter 6 of the APA, as provided in § 244(1) of the Insurance Code. That is not the case here. Again, this action involves a challenge to the validity of the administrative rules, not a challenge to the applicability of them.

[2] Because *Northwestern Nat'l Cas* is procedurally and factually distinguishable from the present case, I am not troubled by the failure of the panel in *Northwestern Nat'l Cas* to indicate that an original action is proper where, as here, the action seeks to have administrative rules declared invalid, illegal, or unenforceable. The question simply was not before that panel.

### B. PLAINTIFFS WERE NOT REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES BEFORE SEEKING REVIEW IN THE CIRCUIT COURT PURSUANT TO CHAPTER 3 OF THE APA

Section 64 of chapter 3 of the APA, MCL 24.264, addresses actions for a declaratory judgment to determine the validity of administrative rules and provides:

Unless an exclusive procedure or remedy is provided by a statute governing the agency, the validity or applicability of a rule may be determined in an action for declaratory judgment when the court finds that the rule or its threatened application interferes with or impairs, or imminently threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The action shall be filed in the circuit court of the county where the plaintiff resides or has his principal place of business in this state or in the circuit court for Ingham County. The agency shall be made a party to the action. *An action for declaratory judgment may not be commenced under this section unless the plaintiff has first requested the agency for a declaratory ruling and the agency has denied the request or failed to act upon it expeditiously.* This section shall not be construed to prohibit the determination of the validity or applicability of the rule in any other action or proceeding in which its invalidity or inapplicability is asserted. [Emphasis added.]

Defendant maintains that plaintiffs cannot pursue this action because plaintiffs did not first request a declaratory ruling from the OFIS. Notwithstanding the express language calling for the exhaustion of administrative remedies before initiating an action for a declaratory judgment, this Court has long recognized an exception to the requirement that a party exhaust administrative remedies before filing suit in the circuit court. See *L & L Wine & Liquor Corp v Liquor Control Comm,* 274 Mich App 354, 358-359; 733 NW2d 107 (2007) (recognizing an exception to the exhaustion requirement where exhaustion before the administrative agency would be futile); *Nalbandian v Progressive*

*Michigan Ins Co,* 267 Mich App 7, 10 n 2; 703 NW2d 474 (2005) (rejecting the insurer's claim that the plaintiff was required to exhaust administrative remedies because to do so would have been futile); *Susan R Bruley Trust v Birmingham,* 259 Mich App 619, 627; 675 NW2d 910 (2003) (holding that litigants will not be made to pursue an administrative process when only the courts have the authority to resolve the controlling issue); *Citizens for Common Sense in Gov't v Attorney General,* 243 Mich App 43, 52-54; 620 NW2d 546 (2000) (recognizing the futility exception where exhaustion before the administrative agency would be futile); *Manor House Apartments v City of Warren,* 204 Mich App 603, 605; 516 NW2d 530 (1994) (holding that the taxpayer was not required to exhaust administrative remedies before the Tax Tribunal because such action would have been futile); *Turner v Lansing Twp,* 108 Mich App 103, 108; 310 NW2d 287 (1981) (holding that exhaustion of administrative remedies is not required where it is clear that appeal to an administrative agency is "an exercise in futility and nothing more than a formal step on the way to the courthouse"); *Sterling Secret Service, Inc v Dep't of State Police,* 20 Mich App 502, 511; 174 NW2d 298 (1969) (holding that requiring the plaintiff to utilize the APA to have the defendant revoke its rules "would have been a vain and useless act"). Following this long line of cases, plaintiffs in this case were not required to ask the OFIS to declare its newly enacted rules illegal and invalid. Simply put, to do so would have been "a vain and useless act." *Id.*

I respectfully disagree with Judge KELLY's apparent conclusion that she may ignore the many cases recognizing the futility exception to the requirement that one must exhaust administrative remedies before initiating an action for judicial review under the APA. Many of these cases were decided after November 1, 1990. Thus,

we are bound pursuant to MCR 7.215(J) to follow the many cases recognizing this exception. The inconsistency between the APA and the judicially created futility exception must be resolved, if at all, by a conflict panel of this Court or by our Supreme Court. It is simply beyond the power of this panel to reverse or ignore this well-established doctrine.

Here, the futility in attempting to seek administrative review from the OFIS is obvious. Plaintiffs are challenging the validity of the administrative rules and the OFIS is powerless to pass on the validity of its rules. As noted in LeDuc, Michigan Administrative Law, § 8:13, pp 576-577:

> . . . Section 63 empowers an agency to issue a declaratory ruling only as to the applicability of a rule, not as to its validity. The reason for this is obvious, an agency is unlikely to find its own rules invalid and those rules are presumed to be valid anyway. Courts will ultimately determine the validity of a rule. Section 64 thus specifically empowers a court to hear an action for a declaratory judgment as to either the validity or applicability of a rule. *The exhaustion requirement of Section 64 (requiring resort first to the submission of a declaratory ruling) applies only when a plaintiff wishes to challenge the applicability of a rule to an actual set of facts. Section 63 does not authorize an agency to issue a ruling on the validity of rules, so there is nothing to exhaust.* [Emphasis added.]

Moreover, consistent with Judge WHITE's observation that "[p]laintiffs are not aggrieved by the rules because the rules have not yet been applied to them," *ante* at 351, plaintiffs could not have sought a declaratory ruling from the OFIS. MCL 24.263 controls requests for declaratory rulings from agencies and provides that "[o]n request of an interested person, an agency may issue a declaratory ruling as to the applicability to *an actual state of facts* of a statute administered by the

agency or of a rule or order of the agency." (Emphasis added.) In this regard, I agree with *Michigan Ass'n of Home Builders v Director of Dep't of Labor & Economic Growth*, 276 Mich App 467, 480-481; 741 NW2d 531 (2007), vacated in part on other grounds 481 Mich 496 (2008), in that

> [a] plain reading of MCL 24.263 requires that an interested person have "an actual state of facts" to bring before the agency for its consideration. Here, plaintiff did not have an "actual state of facts" to bring before the [Department of Labor and Economic Growth]. Therefore, plaintiff could not seek a declaratory ruling before seeking judicial relief.

For these reasons, I conclude that plaintiffs were not required to seek review by the OFIS before initiating this action.

### II. THE CIRCUIT COURT CORRECTLY DETERMINED THAT THE RULES PROMULGATED BY THE OFIS ARE ILLEGAL AND INVALID

#### A. *MICHIGAN ASS'N OF HOME BUILDERS v DIRECTOR OF DEP'T OF LABOR & ECONOMIC GROWTH*

Preliminarily, I am compelled to address our Supreme Court's recent memorandum opinion in *Michigan Ass'n of Home Builders, supra.* There, our Supreme Court concluded that a circuit court reviewing the validity of rules created by an administrative agency must limit its review to the agency record. In the present case, the circuit court erred because it did not limit its review to the agency record. I nonetheless conclude that this error was harmless, because the circuit court made a purely legal ruling that was not based on any record. Rather, the circuit court's conclusions, as well as my own, are based exclusively on the statutes granting the OFIS its rulemaking authority and the statutes that permit insurers to file and use

rates in Michigan. Here, plaintiffs are asserting a purely legal challenge to the process implemented by the OFIS. For this reason, I conclude that the lower court's error in expanding the record is harmless and does not require reversal.

### B. STANDARD OF REVIEW

The standard of review applicable to this case is found in *Chesapeake & O R Co v Pub Service Comm*, 59 Mich App 88, 98-99; 228 NW2d 843 (1975), and was adopted by our Supreme Court in *Luttrell v Dep't of Corrections*, 421 Mich 93, 100; 365 NW2d 74 (1984) (the "*Luttrell* standard"):[3]

> Where an agency is empowered to make rules, courts employ a three-fold test to determine the validity of the rules it promulgates: (1) whether the rule is within the matter covered by the enabling statute; (2) if so, whether it complies with the underlying legislative intent; and (3) if it meets the first two requirements, when [sic] it is neither arbitrary nor capricious.

### C. THE ADMINISTRATIVE RULES PROMULGATED BY THE OFIS

The OFIS enacted five administrative rules that, when applied together, prohibit insurers from using insurance scores as a rating factor for the issuance of personal insurance in Michigan. Mich Admin Code, R 500.2151 through 500.2155. The OFIS defined "insurance score" to mean "a number, rating, or grouping of

---

[3] As an ancillary matter, I agree with the observations of Justice RYAN in his concurring opinion in *Luttrell*, *supra* at 108-109. There is no authority for the standard of review created in *Chesapeake & O R Co* and embraced by our Supreme Court in *Luttrell*. In my opinion, the validity of rules promulgated by administrative agencies presents a pure legal question that courts ought to review de novo as a matter of law. However, we are bound to accept *Luttrell* until the Supreme Court rules otherwise.

risks that is based in whole or in part on credit information for the purposes of predicting the future loss exposure of an individual applicant or insured." R 500.2151(1). The OFIS required all insurers to adjust their base rates on all personal insurance through the use of a formula that eliminated all insurance score discounts. R 500.2154.

As a result of the implementation of these rules, insurers are required to provide a rate discount to policyholders with lower insurance scores and increase the rates paid by policyholders who have higher insurance scores.

### D. THE RULES PROMULGATED BY THE OFIS FAIL TO SATISFY THE *LUTTRELL* STANDARD

In the broadest sense, the rules under review do not offend the first prong of the *Luttrell* standard. MCL 500.210 provides that "[t]he commissioner shall promulgate rules and regulations in addition to those now specifically provided for by statute as [s]he may deem necessary to effectuate the purposes and to execute and enforce the provisions of the insurance laws of this state . . . ." To the extent that the rules challenged by the plaintiffs relate to matters the commissioner deemed necessary to effectuate the insurance laws of Michigan, the rules survive judicial review.

The rules fail the second prong of the *Luttrell* standard because they do not comply with the underlying legislative intent behind the statutes governing insurance rates in Michigan. Courts ascertain and give effect to the Legislature's intent by reviewing the language of the statute under review. *Neal v Wilkes,* 470 Mich 661, 665; 685 NW2d 648 (2004). Courts "must look at the specific statutory language and, if it is ' "clear and unambiguous, judicial construction is neither required

nor permitted, and courts must apply the statute as written." ' " *Diamond v Witherspoon*, 265 Mich App 673, 684; 696 NW2d 770 (2005), quoting *Erb Lumber, Inc v Gidley*, 234 Mich App 387, 392; 594 NW2d 81 (1999), quoting *USAA Ins Co v Houston Gen Ins Co*, 220 Mich App 386, 389; 559 NW2d 98 (1996). "Furthermore, 'a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself.' " *Diamond, supra* at 685, quoting *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).

The rules promulgated by the OFIS are inconsistent with the legislative intent as determined from the express language of the ratemaking and rate-review provisions of the Insurance Code because the Michigan Legislature has made it clear that the OFIS cannot (1) invalidate on an industry-wide basis rates that are deemed valid under the process provided in the Insurance Code and (2) order through its rulemaking authority rate reductions without first finding through an administrative hearing that the insurer's rates are excessive.

### 1. THE OFIS CANNOT INVALIDATE ON AN INDUSTRY-WIDE BASIS RATES THAT ARE DEEMED VALID UNDER THE PROCESS PROVIDED IN THE INSURANCE CODE

The Michigan Legislature has enacted a system that permits Michigan insurance companies to implement their insurance rates without preapproval by the OFIS. For individual home and automobile insurance under chapter 21 of the Insurance Code, insurers may implement their rate plans immediately upon filing them with the OFIS. MCL 500.2106. For casualty and other insurance available under chapter 24 of the Insurance Code and property and other insurance available under

chapter 26 of the Insurance Code, there is a 15-day waiting period between the date rate plans are filed and the date the rate plans may be implemented. MCL 500.2408; MCL 500.2608. If the OFIS fails to disapprove the rate plans or seek an extension of the waiting period within the initial 15-day waiting period, the rate plans are deemed approved and valid. For all rate plans filed under chapter 21 of the Insurance Code and all rate plans that are deemed approved after expiration of the applicable waiting periods under chapters 24 and 26 of the Insurance Code, the OFIS may challenge particular filings only through an administrative hearing against the individual insurer implementing the contested rates. MCL 500.2114, 500.2115, 500.2418, 500.2420, 500.2618, and 500.2620. Thus, the Legislature limited the authority of the OFIS to challenge rates that are implemented pursuant to the legislative process. If the OFIS wants to challenge such rates, it may do so only by initiating an administrative hearing against the insurer whose rate plan is being challenged.

Here, the OFIS has utilized its rulemaking authority to implement an industry-wide prohibition on the use of insurance scoring which, in effect, invalidates otherwise validly filed rate plans for insurers across Michigan. The OFIS lacks the authority to implement such rules because they are inconsistent with the express statutory ratemaking provisions duly enacted through the legislative process.

Recognizing its inability to reduce otherwise valid rates through the implementation of rules, the OFIS disingenuously argues that the rules do not invalidate existing approved rate filings. However, the OFIS cannot deny that the purpose, intent, or desired effect of the OFIS rules is to abolish the use of insurance scores (consideration of the insured's credit report) in the

ratemaking process. However, pursuant to the ratemaking process provided under the Insurance Code, many rates on file with the OFIS permit an insurer to consider an insured's credit history to establish the insured's policy rate. In no uncertain terms, the OFIS rules, if deemed valid, would render invalid existing rate filings for all insurers who use insurance scoring to determine their rates.

The OFIS also argues that every aggrieved insurer can ignore the rules and thereby force the OFIS to conduct a contested case hearing. Thus, the OFIS concludes, it has not circumvented the process for establishing rates provided in the Insurance Code. There is no merit to this claim. Any hearing conducted by the OFIS would presume that the rules challenged by plaintiffs in this case are valid and enforceable. The sum and substance of the hearing would be a review of whether the insurer utilized insurance scoring as that term is defined in R 500.2151(1). If the answer is in the affirmative, the insurer loses and is subject to the penalties for violating the rules. To the extent the OFIS believes that insurance scoring is not a permissible ratemaking factor, the OFIS is obligated to initiate a contested case against an individual insurer, thereby allowing the insurer to establish whether its rates are excessive, inadequate, or unfairly discriminatory under the Insurance Code.

### 2. THE OFIS CANNOT ORDER THROUGH ITS RULEMAKING AUTHORITY RATE REDUCTIONS WITHOUT FIRST FINDING THROUGH AN ADMINISTRATIVE HEARING THAT THE INSURER'S RATES ARE EXCESSIVE

As previously stated, the effect of the rules implemented by the OFIS is to order a rate reduction for certain policyholders with low insurance scores. The OFIS has no authority to order rate reductions without

first determining that an insurer's rates are excessive. The term "excessive" is defined in the Insurance Code, which provides that a "rate shall not be held to be excessive unless the rate is unreasonably high for the insurance coverage provided *and* a reasonable degree of competition does not exist for the insurance to which the rate is applicable." MCL 500.2109(1)(a) (emphasis added); see also MCL 500.2403(1)(d) and 500.2603(1)(d). Administrative hearings are required, again individual hearings for individual insurers, to determine whether a rate is excessive and whether there is a lack of competition. MCL 500.2114, 500.2115, 500.2418, and 500.2618.

Here, no individual administrative hearings were held to address either the excessiveness of an individual insurer's rates or the competition within the marketplace. Thus, the rules implemented by the OFIS are inconsistent with the scheme put in place by the Legislature.

For these reasons, I would affirm the opinion and order of the lower court.

KELLY, J. (*concurring in part and dissenting in part.*) I concur with Judge WHITE's conclusion that the trial court erred in failing to limit its review to the administrative record, *Michigan Ass'n of Home Builders v Dep't of Labor & Economic Growth Director*, 481 Mich 496; 750 NW2d 593 (2008), and that the trial court's opinion and order granting a permanent injunction must be vacated for that reason alone. However, I respectfully dissent from the conclusion of Judge WHITE and Judge ZAHRA that this matter was properly before the trial court. The circuit court erred by permitting plaintiffs to proceed by way of an original action. Finding this issue dispositive, I would not reach the remaining issues.

Issues of statutory interpretation present questions of law that are reviewed de novo. *Michigan Basic Prop Ins Ass'n v Ware,* 230 Mich App 44, 48; 583 NW2d 240 (1998). "The primary purpose of statutory interpretation is to ascertain and give effect to the intent of the Legislature." *Id.* at 49. Where the statutory language is clear and unambiguous, a court must apply it as written. *Howard v Clinton Charter Twp,* 230 Mich App 692, 695; 584 NW2d 644 (1998). In addition to these basic principles, we keep in mind that the wisdom of a statute is for the Legislature to determine and the law must be enforced as written. *Smith v Cliffs on the Bay Condo Ass'n,* 463 Mich 420, 430; 617 NW2d 536 (2000); *In re Worker's Compensation Lien,* 231 Mich App 556, 562-563; 591 NW2d 221 (1998). This Court "may not inquire into the knowledge, motives, or methods of the Legislature, and may not impose a construction on a statute based on a policy decision different from that chosen by the Legislature." *Fowler v Doan,* 261 Mich App 595, 599; 683 NW2d 682 (2004) (citations omitted).

Section 244(1) of the Insurance Code, MCL 500.244(1), provides:

> A person aggrieved by a final order, decision, finding, ruling, opinion, *rule,* action, or inaction provided for under this act may seek judicial review in the manner provided for in chapter 6 of the administrative procedures act of 1969, 1969 PA 306, MCL 24.301 to 24.306. [Emphasis added.]

"MCL 24.264 [§ 64 of chapter 3 of the Administrative Procedures Act] allows a plaintiff to challenge the validity of a rule in an action for a declaratory judgment." *Michigan Ass'n of Home Builders, supra* at 499. MCL 24.264 provides:

> *Unless an exclusive procedure or remedy is provided by a statute governing the agency,* the validity or applicability of

a rule may be determined in an action for declaratory judgment when the court finds that the rule or its threatened application interferes with or impairs, or imminently threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The action shall be filed in the circuit court of the county where the plaintiff resides or has his principal place of business in this state or in the circuit court for Ingham county. The agency shall be made a party to the action. *An action for declaratory judgment may not be commenced under this section unless the plaintiff has first requested the agency for a declaratory ruling and the agency has denied the request or failed to act upon it expeditiously.* This section shall not be construed to prohibit the determination of the validity or applicability of the rule in any other action or proceeding in which its invalidity or inapplicability is asserted. [Emphasis added.]

In *Northwestern Nat'l Cas Co v Comm'r of Ins*, 231 Mich App 483; 586 NW2d 563 (1998), two insurance companies challenged an administrative decision of the insurance commissioner by filing both a petition for review under § 244 of the Insurance Code, MCL 500.244, and a complaint in the circuit court. The circuit court dismissed the original action, concluding that the insurance companies were limited to a petition for review. This Court affirmed, holding that § 244(1) establishes *the exclusive procedure* for challenging the commissioner's decisions:

> We also reject appellants' argument that the trial court improperly dismissed their attempt to start an original action.
>
> The commissioner's decisions may be challenged only as provided in the Insurance Code, i.e., "in the manner provided for in chapter 6 of the administrative procedures act . . . ." MCL 500.244(1); MSA 24.1244(1). Under the APA, administrative decisions are "subject to *direct review* by the courts as provided by law." MCL 24.301; MSA 3.560(201) (emphasis added). *Review is to be sought by filing a petition for review*, MCL 24.302; MSA 3.560(202),

in the circuit court, MCL 24.303(1); MSA 3.560(203)(1), within sixty days of the date when the agency's decision was mailed, MCL 24.304(1); MSA 3.560(204)(1). *Clearly, an independent action attacking the agency's decision is not contemplated.* [*Northwestern Nat'l Cas, supra* at 495-496 (emphasis added in part).]

Plaintiffs argue that *Northwestern Nat'l Cas*, is distinguishable because it involved an "adjudicatory" action, whereas this case involves a "legislative" action. This argument fails for two reasons. First, the *Northwestern Nat'l Cas* Court made no such distinction. And second, § 244(1), applied by the *Northwestern Nat'l Cas* Court, expressly applies to a "rule" of an agency, i.e., to "legislative" actions, because it provides: "A person aggrieved by a final order, decision, finding, ruling, opinion, *rule*, action, or inaction provided for under this act may seek judicial review in the manner provided for in chapter 6 of the administrative procedures act . . . ." MCL 500.244(1) (emphasis added).

The circuit court's determination that § 244(1) does not provide an exclusive remedy because it uses permissive, not mandatory, language (an aggrieved party "*may* seek judicial review") was unsupported by authority and is contrary to *Northwestern Nat'l Cas*. Plaintiffs cite no authority in support of such a reading of § 244(1). The circuit court erroneously allowed plaintiffs' original action to proceed.

Thus, I would vacate the circuit court's opinion and order granting a permanent injunction and declaring defendant's rules illegal, unenforceable, and void, and dismiss plaintiffs' case without prejudice to plaintiffs' filing a petition for review under MCL 500.244.